**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ABIMAEL ROBLERO-SOLIS,
*Defendant-Appellant.*

No. 08-10396

D.C. No.
4:08-cr-00271-CKJ

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JANET ROBLERO-PEREZ,
*Defendant-Appellant.*

No. 08-10397

D.C. No.
4:08-cr-00272-CKJ

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JORGE ROSALES-VARGAS,
*Defendant-Appellant.*

No. 08-10466

D.C. No.
4:08-cr-00270-DCB

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MIGUEL ZARAZUA-PICHARDO,
*Defendant-Appellant.*

No. 08-10509

D.C. No.
4:08-cr-00306-RCC

15697

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOSE VAZQUEZ-MORALES,
          *Defendant-Appellant.*

No. 08-10512

D.C. No.
4:08-cr-00312-RCC


UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

          v.

GUMERCINDO MARTINEZ-CARRIZOSA,
          *Defendant-Appellee.*

No. 08-10543

D.C. No.
4:08-CR-00311-
FRZ-1

OPINION

Appeals from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding
David C. Bury, District Judge, Presiding
Raner C. Collins, District Judge, Presiding
Frank R. Zapata, District Judge, Presiding

Argued and Submitted
November 2, 2009—San Francisco, California

Filed December 2, 2009

Before: John T. Noonan and William A. Fletcher,
Circuit Judges, and Thomas Duffy,* District Judge.

Opinion by Judge Noonan

*The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

## COUNSEL

Jason Hannan, Assistant Federal Public Defender, Tucson, Arizona, for the defendants-appellants-appellees.

Robert L. Miskell, Assistant United States Attorney, Tucson, Arizona, for the plaintiff-appellee-appellant.

## OPINION

NOONAN, Circuit Judge:

To accommodate the enormous number of prosecutions for illegal entry into the United States, the district court for the District of Arizona (Tucson) has adopted a procedure for the taking of pleas en masse intended to preserve the rudiments of Fed. R. Crim. P. 11 and the constitution. We were informed by the government in this case that one magistrate judge is assigned each week full time to the handling of these cases and that in twelve months' time the court has handled 25,000. The procedure has been in practice for at least two years and is apparently followed in several other federal courts whose districts border on Mexico.

The problem generated by the massive caseload on the court understandably led the court to adopt a shortcut. Abstractly considered, the shortcut is not only understandable but reasonable. The shortcut, however, does not comply with Rule 11. We cannot permit this rule to be disregarded in the name of efficiency nor to be violated because it is too demanding for a district court to observe. We act within a system maintained by the rules of procedure. We cannot dispense with the rules without setting a precedent subversive of the structure. Accordingly, on this challenge by an intrepid federal public defender to the Tucson court's taking of pleas en masse, we hold the procedure to be contrary to Rule 11. We then assess the harm to the substantial rights of the six defendants before us on this appeal.

### FACTS

Abimael Roblero-Solis (Roblero-S.), age about 19, a citizen of Mexico, was apprehended by the United States Border Patrol on March 3, 2008 inside of the United States without documents authorizing his entry into the United States.

Janet Roblero-Perez (Roblero-P.), age about 19, is another citizen of Mexico, apprehended on March 3, 2008 by the Border Patrol inside of the United States without documents.

Jose Vasquez-Morales (Vasquez), about 26, is a citizen of Mexico, also arrested on March 3, 2008 by the Border Patrol inside of the United States without documents.

Gumercindo Martinez-Carrizosa (Martinez), age about 26, is another Mexican citizen without documents, arrested by the Border Patrol on March 3, 2008 inside of the United States.

Jorge Rosales-Vargas (Rosales), age about 24, is another citizen of Mexico, apprehended without documents by the Border Patrol inside of the United States, March 3, 2008.

Miguel Zarazua-Pichardo (Zarazua), age about 29, is a citizen of Mexico, also apprehended by the Border Patrol on March 3, 2008 inside of the United States without documentation.

## PROCEEDINGS

*March 5, 2008.* Roblero-P, Robero-S, Martinez and Vasquez appeared before Magistrate Judge Jennifer Guerin. They were represented by Jason Hannan, Assistant Federal Public Defender. Forty-three other defendants facing a similar charge were present and had guilty pleas accepted. The proceedings in which they were participants are conveniently set out by Tucson District Judge David G. Bury in one of the decisions here on appeal:

> The Arizona Denial Prosecution Initiative (ADPI, a.k.a. Operation Streamline) is used by the United States Border Patrol to bring 50 to 100 people per day before a United States Magistrate Judge for an initial appearance to explain the charges against them and their rights, accept any guilty pleas, and

sentence them. The proceedings before the Magistrate Judge pertain to petty misdemeanor violations under 8 U.S.C. § 1325 for entering the country illegally and are conducted *en masse*, except for individually taking role and the actual guilty pleas.

The court asked defense counsel if all of their clients "wish to plead guilty this afternoon," and the record reflects "general 'yes' answers." The court then asked if there was "any objection to conducting these proceedings as a group." Hannan stated:

> Your Honor, I would ask that the court determine that each of them has understood their rights, the factual basis has been inquired of each of them individually, and that each of them has an opportunity to speak, to be addressed by the court personally and to allocute to the court with defense counsel.
>
> THE COURT: So you have no objection to the group advisement is what I understand?
>
> HANNAN: Correct, as long as the court would inquire as to each individually if they understood their rights and the waiver (unintelligible).
>
> THE COURT: Thank you.

The court advised defendants collectively of the procedure which it intended to use to take the pleas as a group:

> THE COURT: I'm going to be advising you and informing you of your rights. If at any time you don't understand what I'm saying or if you cannot hear me or hear the interpreter, I ask that you stand and that will give us the opportunity to make sure that the hearing apparatus is working correctly and also to clarify any questions that you might have. If

> I direct a question to you as a group, then I ask that each one of you answers that question out loud loudly so that I can see and hear your response. If I cannot hear a response, then I will not be able to accept your guilty plea. Does everyone understand these directions?

The record reports a "General 'yes' response."

The court then advised the group of their rights to remain silent and to be represented by an attorney and noted that each defendant had an opportunity to meet with his attorney in the morning. The court then asked anyone who did not know the charges against him to stand. The court noted for the record that "no one is standing."

The court advised the defendants of the consequences of their plea. After each statement, the court asked defendants if they understood, and each time the interpreter relayed a "General 'yes' response." The court asked "If anyone has any questions about what I've advised so far, please stand at this time." The court noted for the record that no one was standing.

The court similarly advised defendants of their rights to a trial and their rights at trial. After these advisements, the court asked if the defendants understood "your right to have a trial and what would be involved in that trial." The interpreter conveyed a "General 'yes' response." The court asked that anyone who did not understand stand up. No one stood.

The court asked if the defendants understood "that if you plead guilty here this afternoon that there will be no trial." The interpreter conveyed another "General 'yes' response." However, the court paused here: "I'm not hearing everybody respond to the question. So let me ask again to make sure that everyone does understand that. Do you understand that if you

plead guilty here this afternoon that there will be no trial." The interpreter conveyed another "General 'yes' response."

Moving on, the court asked if the defendants understood that by pleading guilty there would be no trial: "General 'yes' answer." The court asked if anyone had forced or threatened defendants to plead guilty: "General 'no' response." The court asked defendants if they were pleading guilty "voluntarily and because you are guilty": "General 'yes' response."

The court noted that those defendants who did not have a written plea agreement (including all defendants appealing here) had no plea agreement with the government. The court asked if those defendants understood that the court "can impose any sentence up to the maximum sentence that I advised you of earlier": "General 'yes' response."

The court then moved to the taking of the pleas. "Counsel" the court asked, "do you believe that your clients are competent to plead guilty and that they are doing so voluntarily?" "Counsel" gave "General 'yes' answers." The court resumed addressing the defendants, explained the elements of illegal entry, and asked "Do each of you understand the charge of illegal entry?" Again, "General 'yes' response." The court then asked anyone who did not understand the charge to stand. The record does not show whether anyone stood.

Now the court began to address defendants individually. Each defendant was asked in turn "how do you plead to the charge of illegal entry?" Each defendant responded, when called upon, "Guilty."

The court returned to addressing all defendants collectively and asked them if they had committed each of the five elements of illegal entry. After each question, the court received a "General 'yes' response" or a "General 'no' response" consistent with guilt. After elements two and five, but not the others, the court specifically asked defendants to stand if their

answer was otherwise. The court noted for the record after elements two and five that no one stood.

The court returned to addressing counsel: "Mr. Hannan, noting your objections, or just putting aside your objection for a moment, counsel, are you satisfied with the factual basis for the pleas with the exception of Mr. Hannan's clients?" Counsel gave "General 'yes' answers." The government indicated that it, too, was satisfied. The court asked whether there was "any legal reason why the court should not accept the pleas." "Counsel" responded with "General 'no' answers." The court stated that it was accepting the pleas of all defendants.

In the sentencing phase, the court sentenced en masse to time served all defendants who did not have written plea agreements.

After sentencing, the court turned again to Hannan and his clients specifically. This exchange followed:

> THE COURT: I want to make sure we have resolved all your concerns. If you want to have additional information on the record, we can do that and have your clients remain to do that.

> MR. HANNAN: Okay. I guess my objection, though, if I could just clarify to the court, was that the factual basis, the waiver of their rights would be addressed individually. They have already pled guilty and [been] sentenced. So I guess I'm not sure what there is to address.

> THE COURT: I think there's two ways that it can be handled.

> You can withdraw any concerns that you might have about it or we can make sure that all of your concerns have been addressed and your defendants can

remain in the courtroom and we will address those issues at this time to ensure there has been a factual basis that is satisfactory to you and that they have had every right to allocution that you think they might have been deprived of in this process.

So I will leave that election to you.

MR. HANNAN: I guess we will have them remain in courtroom. Thank you.

The court addressed each defendant represented by Hannan individually and asked whether he or she "underst[ood] that by pleading guilty that you were giving up your right to have a jury trial." Each defendant responded "Yes." The court then asked each defendant individually what country he or she was a citizen of. Each confirmed to the court that he or she was a citizen of Mexico. The court then began addressing all of the defendants represented by Hannan as a group. The court asked, "Did anyone enter at a point of entry?" The interpreter gave the defendants' responses as "All 'no.' " The court asked, "Did any of you have official permission to be present in the United States?": "All 'no.' " After asking Hannan if he had anything further, the court ended the proceedings.

*March 6, 2008*. Magistrate Judge Guerin took the pleas of fifty defendants, including Rosales and Zarazua. Rosales and Zarazua were represented by Hannan. Again, after taking roll call, the magistrate judge asked if there were any objections to conducting the proceedings as a group. Hannan objected "to having the proceedings done in a group" as to Zarazua and Rosales. Hannan explained the basis for his objection:

Your Honor, the basis for the objections is that my clients in order to determine that the waiver is knowing and voluntary requires an individualized assessment by the court. Additionally, as to the inquiry to the factual basis, in order to determine there is a fac-

tual basis (unintelligible). And, thirdly, the defendant has a right to allocute before the court personally as well as defense counsel addressed by the court. Both of my clients would like to do that.

In response, the magistrate judge questioned Hannan, asked him if he had met with his clients, if he had advised them as to their waiver, as to whether he thought that they understood the waiver, as to whether he had any doubt of the factual basis for each client's offense, and as to whether he believed that the pleas were voluntary. He answered that he had made the advisements and that he had no doubt as to the factual basis and waiver. Hannan did not object that the court was not responding to his original objection. Neither the magistrate judge nor Hannan returned to his objections for the rest of the March 6 proceeding.

After the colloquy regarding Hannan's objections, the court explained to the defendants the process that it would use to take their pleas, including asking any defendant who did not understand at any time to stand up. In the same fashion as it had in the March 5 proceeding, the court proceeded to explain defendants' rights and ask whether defendants understood the charges and the maximum penalty. In each case, the court received "General 'yes' answers" as it had on March 5. As on March 5, the court then addressed defendants one-by-one and asked how each defendant pleaded. In each case, defendant responded "Guilty."

To elicit the factual basis for these pleas, the magistrate returned to addressing the defendants en masse. She asked the defendants whether they disputed each element of the crime and received "General 'no' answers" consistent with guilt. At that time the court accepted the pleas of guilty and found that the pleas were knowing, intelligent, and voluntary. Unlike March 5, there was no post-plea colloquy with Hannan's defendants.

*Hearings in the District Court*. Each of the six defendants appealed his conviction by the magistrate judge to the district court. Their appeals were assigned to four different district judges.

Each district court judge approached the cases somewhat differently. Judge Cindy Jorgensen found that Roblero-S's and Roblero-P's claims of error were not preserved and reviewed their plea proceedings for plain error. Under this standard, when the post-sentencing proceedings were taken into account, Judge Jorgensen found that the magistrate did not plainly err under the standards of Rule 11. Judge Jorgensen also found that it was not error under the standards of due process for the magistrate to take defendants' pleas in a group proceeding involving 47 defendants, because defendants were represented by attorneys when their pleas were taken.

Judge Raner Collins found that Hannan's objections at the outset of the proceedings were sufficient to preserve Vasquez's claims of Rule 11 error, and thus applied a de novo standard of review to the Rule 11 claims. Nonetheless, looking at the record as a whole, apparently including the post-sentencing proceedings, Judge Collins found that the magistrate had produced a record that showed a factual basis to satisfy Rule 11. As to due process, Judge Collins held that the presence of counsel was sufficient.

Judge Frank Zapata vacated the conviction of Martinez. Judge Zapata found that Hannan had made his objection to the factual basis for the plea clear to the court and that there was no resolution of the objection before the court accepted the plea, sentenced the defendant, and entered judgement on the sentence. He also ruled that the post-sentencing colloquy was insufficient to provide the Rule 11 factual basis and that the error was not harmless.

*March 6 Cases.* Judge Collins heard Zarazua's case. He found that Hannan's March 6 objection was sufficient, and

that the court's choice to address Hannan to ask him as counsel whether he believed that his clients were pleading guilty voluntarily and upon a sufficient factual basis did not dispose of the objection. Nonetheless, Judge Collins found that the presence of counsel satisfied due process and that the magistrate had compiled a sufficient record to show that the plea complied with Rule 11.

Rosales had his appeal heard by Judge David Bury. Judge Bury agreed with Judge Collins on every significant issue.

Roblero-P, Roblero-S, Rosales, Vasquez and Zarazua appeal the judgments of the district court. The government appeals the judgment in Martinez's case.

## ANALYSIS

**[1]** *Mootness*. Sua sponte this court raised the question of whether the appeals were moot. The defendants have served their sentences and apparently have been deported. They do face the prospect of a higher sentence if they should again make an illegal entry; but the possibility of "violating the law, getting caught, and being convicted" does not constitute a consequence preventing mootness. *Spencer v. Kemna*, 523 U.S. 1, 15 (1998). But they also face various adverse consequences that will result even if they do not violate the law, such as longer periods during which they will be ineligible to enter legally. Further, in a case where constitutional rights were allegedly at issue, the Supreme Court recognized that a case was not moot when a state procedure cut off the possibility of appeal by the shortness of the sentence being appealed. *Sibron v. New York*, 392 U.S. 42 (1968). Otherwise, it was reasoned, short sentences could short circuit any appeal and deprive defendants in "low visibility" cases of the chance of vindicating their rights under the constitution. *Id.* at 52-53. Although we do not reach a constitutional claim in this case, we believe that analogous considerations counsel treating as

alive these cases where the "time served sentences" are so short that no appeal would be practicable.

*Standard of review*. The decisions of the district judges, deciding questions of law, are reviewed de novo. *See United States v. Waites*, 198 F.3d 1123, 1126 (9th Cir. 2000).

*The Requirements of Rule 11*. Rule 11, in relevant part, reads:

> **(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**
>
> **(1) Advising and Questioning the Defendant**.
>
> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:
>
> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
>
> (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;
>
> (C) the right to a jury trial;
>
> (D) the right to be represented by counsel — and if necessary have the court appoint counsel — at trial and at every other stage of the proceeding;
>
> (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled

self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

(G) the nature of each charge to which the defendant is pleading;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

(I) any mandatory minimum penalty;

(J) any applicable forfeiture;

(K) the court's authority to order restitution;

(L) the court's obligation to impose a special assessment;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a); and

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

**(2) Ensuring That a Plea Is Voluntary.**

Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

### (3) Determining the Factual Basis for a Plea.

> Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.

In its Notes on the 1966 Amendments to the Rules of Criminal Procedure, the Advisory Committee had this to say about the importance and role of Rule 11:

> The great majority of all defendants against whom indictments or informations are filed in the federal courts plead guilty. Only a comparatively small number go to trial. See United States Attorney Statistical Reports, Fiscal Year 1964, p. 1. The fairness and adequacy of the procedures on acceptance of pleas of guilty are of vital importance in according equal justice to all in the federal courts.

It is in the light of these observations that we address the claim that Rule 11 was violated.

**[2]** Rule 11(b)(1) provides that before accepting a guilty plea "the court must address the defendant personally in open court." During this address "the court must determine" that the defendant understood certain specified rights, risks, and consequences. Under section (b)(2) before accepting the guilty plea, "the court must address the defendant personally . . . and determine that the plea is voluntary." Can these mandatory requirements be met when the court addresses a multitude of defendants?

Answering affirmatively, the government has these arguments: First, the adverb "personally" qualifies the action of the judge. It is he who must act in person. Second, the Advisory Committee Notes on the 1966 Amendments indicate that the provisions on addressing the defendant "personally" were made to assure that the judge addressed the defendant, not the

defendant's counsel. Third, out-of-circuit precedents show that several defendants may be addressed together in a plea-taking. *See United States v. Martinez-Martinez*, 69 F.3d 1215, 1223 (1st Cir. 1995); *United States v. Hobson*, 686 F.2d 628, 629-30 (8th Cir. 1981); *United States v. Fels*, 599 F.2d 142, 146 (7th Cir. 1979). The government concludes that "address personally" requires less than "address individually."

**[3]** "Personally," as an adverb, undoubtedly modifies the verb "address": the judge must act in person. But the adverb also qualifies the nature of the judge's speech: it must be to a person, "in a personal manner," as *Webster's Third International Dictionary* (1986) defines "personally." Indeed the word order in which "personally" follows "the defendant" emphasizes that the judge's speech is to be person to person. Persons occupy a central place in the Fourteenth Amendment. "Person" and its derivative "personally" carry constitutional connotations.

**[4]** The rule speaks only of the defendant in the singular. But the rules are not rigid. *Fels* involved three defendants charged as co-conspirators. *United States v. Fels*, 599 F.2d at 144. *Martinez-Martinez* involved two defendants charged as co-conspirators. *United States v. Martinez-Martinez*, 69 F.3d at 1223. *Hobson* involved a small, if unspecified set of co-defendants in the same conspiracy. *United States v. Hobson*, 686 F.2d at 626.

**[5]** In contrast, nothing in the record in our case establishes any connection between the defendants. The numbers are significantly greater. These precedents do not establish a principle that the number of plea-takers may be indefinitely expanded without violation of Rule 11.

**[6]** To be specific, no judge, however alert, could tell whether every single person in a group of 47 or 50 affirmatively answered her questions when the answers were taken at the same time. No judge could have detected a mute response

offered in the midst of a medley of voices saying "Si." No judge, however conscientious, could have possessed the ability to hear distinctly and accurately fifty voices at the same time. The record reflects the most that could be detected: a "General Yes." How different that record is from the hearing in which four of the appellants were questioned together, and the record reflects responses from "All." Neither an indistinct murmur or medley of yeses nor a presumption that all those brought to court by the Border Patrol must have crossed the border is sufficient to show that each defendant pleaded voluntarily.

The errors do not constitute structural error as defined in *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). These "rare" errors are those undermining "the constitution of the trial mechanism": the presence of a biased judge or the denial of the right to counsel. *Id.* Such errors are not redeemable by retrospective analysis or by retrospective action. Such is not the case here. Nonetheless, the defendants assert that they were deprived of substantial rights and the magistrate judge did not remedy the deprivation. Was the error without effect on the substantial right of these defendants?

**[7]** *Unproved Effects.* One of the district judges reviewing the magistrate judge's procedure reviewed for plain error, putting the burden on defendants to show that the errors affected their substantial rights. Other of the judges reviewed for harmlessness, putting the burden on the government to establish it. We believe that plain error was the correct legal test. The standard depends on whether the Rule 11 errors were preserved. We hold that they were not, so plain error should have been the standard applied by each district judge.

Before the March 5 proceedings were terminated the magistrate judge inquired of the four defendants whether they had committed the elements of the offense. Hannan did not ask the court to determine the voluntariness of their pleas. The record shows the magistrate judge seeking to satisfy Hannan's

objections. It shows no discontent let alone objection by him to what she provided.

On March 6, Hannan did object that the court should individually assess the knowing and voluntary character of the two defendants' pleas; but when the magistrate judge responded by interrogating him, he did not say, "That's not my point. You have to get the answers from them." The court could not have understood from his acquiescence that he was secretly preserving his objection. It was waived. Plain error is the standard.

**[8]** That standard is set by *United States v. Dominguez Benitez*, 542 U.S. 74 (2004). The defendants must show that their substantial rights have been affected. Therefore, each defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *Id*. at 83. None of these defendants has made such a showing or even attempted it. Consequently, the judgments of conviction must be upheld and the judgment of acquittal must be reversed.

For the foregoing reasons, the judgment in *Martinez* is REVERSED. The judgments in *Roblero-P*, *Roblero-S., Rosales, Vasquez* and *Zarazua* are AFFIRMED.