**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ODI ERELDI DIAZ-RAMIREZ,
*Defendant-Appellant.*

No. 10-10230

D.C. No.
4:09-cr-02643-
CKJ-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ISMAEL FIGUEROA-ROMERO,
*Defendant-Appellant.*

No. 10-10231

D.C. No.
4:09-cr-02730-
JMR-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding
John M. Roll, Chief District Judge, Presiding

Argued and Submitted
February 16, 2011—San Francisco, California

Filed May 23, 2011

Before: Diarmuid F. O'Scannlain and Stephen S. Trott,
Circuit Judges, and Tena Campbell, District Judge.*

Opinion by Judge O'Scannlain

---

*The Honorable Tena Campbell, Senior United States District Judge for
the District of Utah, sitting by designation.

## COUNSEL

Jason M. Hannan, Assistant Federal Public Defender, District of Arizona, Tucson, Arizona, argued the cause and filed the briefs for the appellants. With him on the briefs was Jon M. Sands, Federal Public Defender, District of Arizona.

Bruce M. Ferg, Assistant United States Attorney, District of Arizona, Tuscon Arizona, argued the cause and filed a brief for the appellee. With him on the briefs were Dennis K. Burke, United States Attorney, District of Arizona, and Christina M. Cabanillas, Appellate Chief, District of Arizona.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether the taking of guilty pleas at a large group plea hearing violated the Fifth Amendment right to due process.

I

A

On November 23, 2009, Odi Ereldi Diaz-Ramirez ("Diaz") and Ismael Figueroa-Romero ("Figueroa") were arrested and charged with illegal entry into the United States, pursuant to 8 U.S.C. § 1325. Both Mexican citizens, Diaz and Figueroa were apprehended near Sasabe, Arizona, and were charged with having entered the United States at a time and place other than that designated by immigration officials. The next day, they appeared at a group plea hearing in the United States District Court for the District of Arizona, as part of the district's "Operation Streamline."

B

1

As we have previously explained, "[t]o accommodate the enormous number of prosecutions for illegal entry into the United States, the district court for the District of Arizona (Tucson) has adopted a procedure for the taking of pleas en masse," known as "Operation Streamline." *United States v. Roblero-Solis*, 588 F.3d 692, 693 (9th Cir. 2009). Under the procedure, a magistrate judge is assigned to preside over a group hearing of fifty to seventy defendants charged with petty misdemeanor violations of illegal entry. The hearing combines the defendants' initial appearances, guilty pleas, and sentencing hearings into one proceeding.

Here, Diaz and Figueroa appeared before Magistrate Judge Bernardo P. Velasco along with sixty-five others facing similar charges.[1] Seventeen different attorneys represented the sixty-seven defendants, with most attorneys representing between four and six defendants. Diaz and Figueroa, along with one other defendant, were represented by the same assistant federal public defender at the hearing. Most defendants, including Diaz and Figueroa, listened to the proceedings through headphones that broadcast the court's Spanish-language translation of the proceedings.

After roll call, Judge Velasco introduced himself to the group of defendants collectively. He instructed them to stand and to get his attention if they experienced any difficulty with their headphones or if they wished to consult with their attorneys. Judge Velasco explained to the defendants that he would be "making some statements" and "asking some questions." He instructed the defendants to answer his questions "audibly" and not to "rely on your neighbor to answer the questions."

Judge Velasco proceeded to inform the defendants collectively of their rights, their charges, and the consequences of choosing to plead guilty. After each statement, Judge Velasco asked the defendants collectively whether they understood what he had described. In response, the record reports "General yes answer[s]" from the group.[2] Before taking pleas,

---

[1]Although the hearing initially included seventy defendants, the government dismissed the charges against three defendants at the outset of the proceedings.

[2]A typical exchange between Judge Velasco and the group reads as follows:

> THE COURT: If you go to trial, this means that you would force the government to bring their witnesses into court to testify in your presence under oath and to be cross-examined by your attorney.
>
> Then you could call your own witnesses and use the subpoena power of the court to compel their attendance.

Judge Velasco asked for anyone who wished to have a trial to stand. Judge Velasco then individually asked each defendant how he chose to plead and whether the alleged factual basis for his charge was true. After the pleas were taken, Judge Velasco asked for anyone who believed that he had a legal right to be in the United States to stand, and noted that no one stood.

When called upon individually, Diaz and Figueroa each pleaded guilty and affirmed the facts alleged against him. Both were sentenced to time served and ordered to be returned to Mexico. Neither Diaz nor Figueroa raised any objection during the plea proceeding.

2

Diaz and Figueroa challenged their convictions in the district court, arguing that the group hearing violated the Fifth Amendment right to due process. The district court rejected both challenges and affirmed the sentences imposed. Diaz and Figueroa each filed a timely notice of appeal, and the two appeals have now been consolidated.

II

On appeal, Diaz and Figueroa argue only that the large-group plea proceeding violated the Fifth Amendment right to due process. Specifically, they contend that the record "does not disclose that [they] voluntarily and understandingly" pleaded guilty, as required by the Supreme Court in *Boykin v.*

---

Finally, unlike this proceeding where you are answering questions, you would have a right to remain silent and it would not be held against you if you chose not to testify.

Do each of you understand this?

THE INTERPRETER: General yes answer.

*Alabama*, 395 U.S. 238, 244 (1969) (internal quotation marks omitted).

Diaz and Figueroa do not allege a Federal Rule of Criminal Procedure 11 violation.

A

Diaz and Figueroa first challenge the standard of review applicable to their claim of constitutional error. Because they failed to raise any objection at the plea hearing, their claim would normally be subject to plain error review. *See* Fed. R. Crim. P. 52(b); *United States v. Williams*, 547 F.3d 1187, 1202 n.13 (9th Cir. 2008). Under such review, Diaz and Figueroa bear the burden of demonstrating that any error was plain on the face of the record, that it affected their substantial rights, and that it seriously affected the fairness or integrity of the judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

Diaz and Figueroa contend, however, that the specific constitutional error they have claimed is not subject to plain error review, regardless of their failure to object at the plea hearing. Namely, they argue that under *Boykin*, where "the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction *must be reversed*." *United States v. Dominguez Benitez*, 542 U.S. 74, 84 n.10 (2004) (emphasis added) (discussing *Boykin*). The Supreme Court has expressed doubt whether "such a conviction could be saved even by overwhelming evidence that the defendant would have pleaded guilty regardless." *Id.*

But the quoted passages suggest only that a *silent* record of a guilty plea is automatically reversible error. This does not suggest that the claim that the group plea hearing was constitutionally inadequate is not subject to plain-error review. Rather, the Supreme Court has simply instructed that it *is*

plain error—and therefore reversible—if we are satisfied that the record contains "*no* evidence" that Diaz's and Figueroa's pleas were voluntary and intelligent. *See id.* (emphasis added); *see also United States ex rel. Wiggins v. Pennsylvania*, 430 F.2d 650, 652 (3d Cir. 1970) (describing *Boykin* as an application of plain error review). So long as the record does contain evidence that Diaz and Figueroa entered their pleas intelligently, they bear the burden of proving that any error in the group hearing was both plain and detrimental to their substantial rights. *Cf. Johnson*, 520 U.S. at 466 ("[T]he seriousness of the error claimed does not remove consideration of it from [plain error review].").

## B

**[1]** As to the merits of Diaz and Figueroa's claim, it has "long been recognized" that a guilty plea must be both "intelligent and voluntary" to satisfy due process. *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970). In particular, the record "must affirmatively disclose," *id.*, that the defendant entered his guilty plea with full awareness of his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. *Boykin*, 395 U.S. at 243. "We cannot presume a waiver of these three important federal rights from a silent record." *Id.*

## 1

Diaz and Figueroa contend that, because of the en masse nature of their plea proceedings, a reviewing court cannot discern whether they actually understood their rights and intelligently chose to waive them by pleading guilty. Diaz and Figueroa argue that the district court failed to "canvas [the] crucial legal matters" with each defendant, and that the group's "general yes" answers are insufficient to show that any specific defendant in fact affirmed his understanding of Judge Velasco's instructions. They contend that such alleged deficiencies are akin to the "silent" record in *Boykin*.

**[2]** Diaz and Figueroa rely heavily on this court's decision in *United States v. Roblero-Solis* for their argument. Shortly after the instant plea hearing took place, we held in *Roblero-Solis* that a nearly identical iteration of Operation Streamline violated Federal Rule of Criminal Procedure 11. *See* 588 F.3d at 694-700. In *Roblero-Solis*, as here, the magistrate informed all defendants collectively of their rights, and solicited en masse oral answers from the group as to whether they understood such rights.[3] *Id.* at 694-95. We held that such procedure violated Rule 11(b)(1), because the magistrate did not "personally address" each defendant as explicitly required by the rule. *Id.* at 700. We expressed particular concern over the collective responses given to the magistrate's questions: "[N]o judge, however alert, could tell whether every single person in a group of 47 or 50 affirmatively answered her questions when the answers were taken at the same time. No judge could have detected a mute response offered in the midst of a medley of voices saying 'Si.' " *Id.* We explained that an "indistinct murmur or medley of yeses" therefore could not comply with Rule 11's personal address requirement.[4] *Id.* Diaz and Figueroa contend that, by this same logic, we cannot tell whether they in fact understood Judge Velasco's instructions, or whether they were simply drowned out by a chorus of sixty-five others who did.

**[3]** *Roblero-Solis*, however, discussed only the requirements of Rule 11's "personally address" language, and does not speak to the much lower bar of due process. *See id.* at 698. Although the "general yes" responses raise some doubt as to whether Diaz and Figueroa each answered Judge Velasco's questions affirmatively, in light of the record as a whole, such doubt does not amount to a violation of *Boykin* or of due pro-

---

[3]The transcript of that hearing indicates the defendants' responses with the same "general 'yes' " answers. *See Roblero-Solis*, 588 F.3d at 694-95.

[4]We nevertheless affirmed the convictions in *Roblero-Solis*, concluding that the defendants in that case had failed to demonstrate that the Rule 11 deficiencies amounted to plain error. *See* 588 F.3d at 701.

cess. In *Boykin*, the record did not show that the defendant was advised of his rights *at all* before he entered his guilty plea. 395 U.S. at 239. By contrast, the hearing transcript in this case contains several indicators that each Defendant indeed entered his plea knowingly and voluntarily.

**[4]** First, Diaz and Figueroa were represented by, and able to consult with, experienced defense counsel. "[T]he constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). Second, Diaz and Figueroa were expressly advised of all relevant rights and consequences of their guilty pleas. Judge Velasco gave all defendants the opportunity to stand if they had any questions—and to ask for a trial—and the record indicates that neither Diaz nor Figueroa did so. Indeed, they suggest neither that they stood nor that Judge Velasco could not have readily seen them if they had. Finally, Diaz and Figueroa give no reason to doubt the record's strong indications that they knowingly entered their pleas, as they do not dispute that they answered Judge Velasco's questions affirmatively.[5]

**[5]** Contrary to Diaz and Figueroa's contention, we have not construed *Boykin* to require individualized instruction and waiver of a defendant's rights akin to that required by Rule 11. *See, e.g.*, *United States v. Pricepaul*, 540 F.2d 417, 425 (9th Cir. 1976) ("[T]he government . . . need not show that each of the three *Boykin* rights was expressly brought to [the defendant's] attention and waived by him."). Rather, "it is not necessary that each waiver be explicit as long as the plea was voluntary and intelligent." *United States v. Carroll*, 932 F.2d

---

[5]Moreover, Diaz and Figueroa also had the opportunity to voice any confusion audibly during the many times that Judge Velasco asked the group whether it understood what he had described. The transcript does not indicate that either Diaz or Figueroa ever did.

823, 824-25 (9th Cir. 1991) (internal quotation marks omitted). In other words, *Boykin* created a much more limited requirement that the record contain *some* affirmative evidence that the defendant entered his plea knowingly and willfully.

**[6]** The record in this case is replete with such evidence, and the hearing transcript is far more substantial than the "silent" record at issue in *Boykin*.

2

**[7]** Because we are not faced with a silent record, Diaz and Figueroa must demonstrate that any error in the proceeding or in the transcript was plain and affected their substantial rights. *Johnson*, 520 U.S. at 466-67. Namely, they must show "a reasonable probability that, but for the error, [they] would not have entered [their] plea[s]." *United States v. Borowy*, 595 F.3d 1045, 1049 (9th Cir. 2010) (internal quotation marks omitted). Because Diaz and Figueroa do not even suggest, much less show, that they would not have pleaded guilty if the plea hearing had been more individualized, we cannot conclude that there was any plain error.

**AFFIRMED.**