**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 11, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALEJANDRO MEJIA-RIOS,

    Defendant - Appellant.

No. 17-2096
(D.C. No. 2:17-CR-00332-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT\***
_____

Before **MATHESON**, **MCKAY,** and **MCHUGH,** Circuit Judges.
_____

Alejandro Mejia-Rios appeals the validity of his guilty plea for re-entering the

country in violation of 8 U.S.C. §§ 1326(a) and (b).  He argues that his plea hearing

violated Rule 11(b) of the Federal Rules of Criminal Procedure and deprived him of due

process under the Fifth Amendment.  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

    \* This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I.  BACKGROUND

## A. *Factual History*

In November 2016, United States Border Patrol Agents arrested Mr. Mejia-Rios, a Mexican citizen, in Doña Ana County, New Mexico.  He had previously been deported from the United States four times.  He was charged with Illegal Reentry of a Removed Alien under 8 U.S.C. §§ 1326(a) and (b).

## B. *Procedural History*

Mr. Mejia-Rios filed a notice of intent to plead guilty.  He also consented to proceed with his plea before a magistrate judge.  *See* 28 U.S.C. § 636(b).  The court scheduled his plea hearing, grouping him with other defendants[1] who also intended to plead guilty to an illegal entry or reentry charge.

### 1. **The Plea Hearing**[2]

The plea hearing was recorded.  We have listened to the recording, which is part of the record on appeal, *see generally* ROA, Supp. Vol., and cite to it in the following overview.

### a. *Advisement*

---

[1] Neither party reports exactly how many other defendants were present at the plea hearing.  *See*, *e.g.*, Aplt. Br. at 3 ("[A]n unknown number of defendants appeared before the magistrate."); Oral Arg. at 1:17-1:36 (counsel for defendant saying she is not sure of the number, but believes "at least between ten and fifteen defendants [were] present").

[2] The defendants had access to an interpreter who translated in real time.  An interpreter also translated the defendants' responses back to the magistrate judge in English.  The written transcript of the hearing contains only the translated responses from the interpreter, not the original Spanish.

The magistrate judge began the plea hearing by addressing all of the defendants and explaining how the hearing would proceed. After describing the rights that the defendants would forgo by pleading guilty, the magistrate judge stated the consequences of a non-citizen's guilty plea, including removal from and a bar on entry to the United States.

b. *Pleas*

The magistrate judge divided the group into sub-groups and placed Mr. Mejia-Rios with three other defendants who intended to plead guilty to the same crime. The court called Mr. Mejia-Rios first out of his sub-group. The magistrate judge asked Mr. Mejia-Rios's counsel whether there was "[a]ny objection to my taking these pleas together?" Counsel responded no. ROA, Vol. III at 14; ROA, Supp. Vol. at 3:44-3:50.

The court clerk swore in the four defendants and told them to "answer all of the questions one at a time beginning with Mr. Mejia-Rios." ROA, Vol. III at 15. The magistrate judge posed questions to the sub-group as a whole, and each defendant answered each question individually. ROA, Supp. Vol. at 3:50-10:23. He asked whether they were under the influence of drugs or had other drug or health issues, and each defendant answered no. The court then asked, "Your attorney has told me that you wish to plead guilty to the felony charges against you. Is that correct?" ROA, Vol. III at 16; ROA, Supp. Vol. at 5:24-5:28. Each of the four defendants individually responded "yes" or "yes, sir." ROA, Supp. Vol. at 5:29-5:33. The court asked them whether they were under threat or force to plead guilty, and each responded that he was not.

3

The magistrate judge reiterated the rights that the defendants were forgoing and the consequences they were facing by pleading guilty. He asked if they understood, and each defendant responded that he did.

The court then explained the reentry charge and asked the defendants whether they understood the charges. Each defendant individually said yes. The Government then explained that the maximum penalty was "up to a 20-year term of imprisonment, a three-year term of supervised release, a $250,000 fine, and a $100 special penalty assessment." ROA, Vol. III at 17; ROA, Supp. Vol. at 7:02-7:12. When the magistrate judge asked if the defendants understood "those maximum penalties," each defendant said yes. ROA, Vol. III at 18; ROA, Supp. Vol. at 7:14-7:21.

Finally, the court asked defendants whether they were satisfied with their representation and had sufficient time to discuss their cases with counsel. Each defendant said yes. The magistrate judge also explained that attorneys provide only their best guess when estimating sentences, that the United States Sentencing Guidelines are only advisory, that a judge could impose a harsher sentence, and that each could receive the maximum sentence under the law. Each defendant individually affirmed that he understood this explanation.

The magistrate judge then took the guilty pleas. He asked the sub-group, "How do you plead to the felony charge of reentry of a removed alien, guilty or not guilty?" ROA, Vol. III at 19; ROA, Supp. Vol. at 8:49-8:53. Each individually responded "guilty" through the interpreter. ROA, Vol. III at 19; ROA, Supp. Vol. at 8:55-9:01. The Government then explained the facts it could prove at trial about the four defendants: (1)

4

none had legal status, (2) each was found in New Mexico after knowingly entering the United States, (3) each had previously been deported, removed, or excluded, and (4) none had permission to reenter. The magistrate judge asked the defendants if these facts were true, and each responded affirmatively. Then he was asked, "Are you pleading guilty today because you are, in fact, guilty of the charges against you?" ROA, Vol. III at 20; ROA, Supp. Vol. at 9:48-9:52. Mr. Mejia-Rios responded, through a translator, "Yes, sir." ROA, Vol. III at 20; ROA, Supp. Vol. at 9:53.

The magistrate judge declared that each defendant was competent to enter a guilty plea and aware of the nature and consequences of his plea. He found that the pleas were knowing and voluntary and accepted them, adjudging all defendants in the sub-group guilty.[3]

Mr. Mejia-Rios's counsel did not object to any of these proceedings.

---

[3] Mr. Mejia-Rios and his counsel also signed two documents relating to the plea: (1) "Consent to Proceed before United States Magistrate Judge in a Felony Case," ROA, Vol. I at 10, and (2) "Waiver of Indictment," ROA, Vol. I at 11. The Magistrate Consent read:

> The United States Magistrate Judge has explained to me the nature of the offense(s) with which I am charged and the maximum possible penalties which might be imposed if I plead guilty. I have been informed of my right to the assistance of legal counsel and of my right to plead or go to trial, judgment and sentencing before a United States District Judge.

*Id.* at 10. The "Waiver of Indictment" listed the charge and further stated: "Alejandro Mejia-Rios . . . being advised of the nature of the charge, the Information, and of defendant's rights, hereby waives in open court prosecution by Indictment and consent to proceedings [sic] by Information rather than by Indictment." *Id.* at 11.

5

## 2. **Sentencing**

Mr. Mejia-Rios's Presentence Investigation Report ("PSR") calculated an imprisonment range of 30 to 37 months under the Sentencing Guidelines, based on a total offense level of 17 and a criminal history category of III. Mr. Mejia-Rios did not file an objection to the PSR.

At sentencing, Mr. Mejia-Rios allocuted, "I would like to apologize for having entered illegally." ROA, Vol. III at 5. His counsel reported to the magistrate judge his client's frustration with the length of his potential sentencing range, which accounted for defendant's previous illegal entry convictions:

> [T]his is one of the cases where he doesn't understand why he's being punished for something that he already served his time on. I think those were the same issues that [his previous lawyer] had in trying to explain to him the enhancements and what he looked -- what he would be looking at if he came back. I did my best to explain that to him. I know he doesn't believe our -- our system is fair in that regard. I told him there's not a lot I can do about it or -- or the prosecutor or your Honor, that those are the rules under which we operate and he needs to be aware of that if he's going to try to come back again, because his sentence would only keep increasing.

ROA, Vol. III at 5-6. The court sentenced Mr. Mejia-Rios to 30 months in prison and three years of supervised release.

Mr. Mejia-Rios timely appealed the final judgment.

## II. **DISCUSSION**

On appeal, Mr. Mejia-Rios challenges his guilty plea as invalid, arguing the group plea hearing violated: (1) Federal Rule of Criminal Procedure 11(b)(1) because it was

6

not sufficiently "personal"; [4] (2) Rule 11(b)(1)(G) because he did not understand how his sentence range was calculated and therefore did not understand the nature of the charged offense; and (3) his right to due process because he did not knowingly and voluntarily waive his rights.

As noted above, Mr. Mejia-Rios did not present any of these objections in the district court. We affirm because Mr. Mejia-Rios forfeited these arguments in district court and has not adequately addressed all of the elements of plain error review on appeal.

## A. *Standard of Review*

"Whether a guilty plea was entered knowingly and voluntarily is generally a question of law we review de novo." *United States v. Rollings*, 751 F.3d 1183, 1191 (10th Cir. 2014). When, as here, the defendant did not object to the validity of the plea, he must demonstrate plain error on appeal. *Id.* "We find plain error only when there is (1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

As to the second step, an error is plain if it is "clear or obvious under current, well-settled law." *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005) (quotations omitted). "In general, for an error to be contrary to well-settled law, either the Supreme

---

[4] As conceded at oral argument, Mr. Mejia-Rios does not challenge the "advisement" portion of his plea hearing. He contests only the proceedings involving him and his sub-group after advisement. *See* Oral Arg. at 1:36-1:48, 10:47-10:57.

Court or this court must have addressed the issue." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012)). This court may also look at the "weight of authority from other circuits" to determine whether error is plain. *Id.* (quoting *United States v. Hardwell*, 80 F.3d 1471, 1484 (10th Cir. 1996)). "When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." *United States v. Story*, 635 F.3d 1241, 1249 (10th Cir. 2011) (quoting *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005)).

When a defendant fails to object in district court, failure to argue plain error on appeal waives a claim for appellate relief. *United States v. Fisher*, 805 F.3d 982, 992 (10th Cir. 2015).

B. *Legal Background*

1. **Federal Rule of Criminal Procedure 11**

Rule 11 states that "[b]efore the court accepts a plea of guilty . . . , the defendant may be placed under oath, and the court must address the defendant personally in open court." Fed. R. Crim. P. 11(b)(1). As relevant here, "During this address, the court must inform the defendant of, and determine that the defendant understands" the rights he forfeits by not going to trial, *id.* at 11(b)(1)(B)-(F); "the nature of each charge to which [he] is pleading," *id.* at 11(b)(1)(G); the maximum possible penalties and mandatory minimum penalties he faces, *id.* at 11(b)(1)(H)-(I); the court's obligation to calculate and consider an applicable Sentencing Guidelines range, possible Sentencing Guidelines departures, and other 18 U.S.C. § 3553(a) sentencing factors, *id.* at 11(b)(1)(M); and

8

removal consequences for non-U.S.-citizens, *id.* at 11(b)(1)(O). The court must also, before accepting a guilty plea, "determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." *Id.* at 11(b)(2).

## 2. Group Plea Hearings

Neither the Supreme Court nor the Tenth Circuit has addressed whether group plea hearings involving defendants charged separately with the same or similar crimes may violate Rule 11(b), but the Ninth Circuit has. It has held that, to be sufficiently "personal" under Rule 11(b), defendants must individually answer a judge on whether they understand the nature of their crime, applicable penalties, and rights being forfeited. *United States v. Roblero-Solis*, 588 F.3d 692, 699-700 (9th Cir. 2009). This principle holds whether the group of defendants is large, *id.* at 700, or small, *United States v. Arqueta-Ramos*, 730 F.3d 1133, 1138-39 (9th Cir. 2013). Answering individually is necessary but not sufficient for a judge to ascertain the voluntariness of a defendant's plea. *United States v. Aguilar-Vera*, 698 F.3d 1196, 1200-01 (9th Cir. 2012). For instance, undue delay between the advisement portion of a plea hearing and the taking of the plea may violate Rule 11(b). *Id.* at 1201.

Other circuits have rejected Rule 11(b) challenges to group plea hearings involving co-defendants facing the same or related charges. *United States v. Martinez-Martinez*, 69 F.3d 1215, 1223 (1st Cir. 1995) (failure to address a defendant individually is not per se reversible error); *United States v. Hobson*, 686 F.2d 628, 629-30 (8th Cir. 1982) (per curiam) (questioning defendants as a group permissible where responses were

9

individual); *United States v. Fels*, 599 F.2d 142, 148 (7th Cir. 1979) (per curiam) (no reversible Rule 11 error in group questioning where defendant responded individually).

3. **Due Process in Plea Hearings**

Because a guilty plea forfeits several constitutional rights, including "the privilege against compulsory self-incrimination guaranteed . . ., the right to trial by jury . . ., [and] the right to confront one's accusers," *Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (citations omitted), the plea hearing must comport with due process, *id.* at 243 n.5. "[I]f a defendant's guilty plea [or no contest plea] is not . . . voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quoting *Boykin*, 395 U.S. at 243 n.5) (alterations in original). A plea must be "the product of a deliberate, intelligent choice," *Cunningham v. Diesslin*, 92 F.3d 1054, 1060 (10th Cir. 1996), and the defendant must have "a full understanding of what the plea connotes and of its consequences," *id.* (quoting *Boykin*, 395 U.S. at 244). We will uphold a guilty plea on a due process challenge "if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty." *Id.*

Neither the Supreme Court nor the Tenth Circuit has addressed whether a group plea hearing violated due process. The Ninth Circuit has held that a group plea hearing does not in itself violate a defendant's due process protection, provided there are sufficient guarantees that defendant's plea was voluntary and knowing. *See United States v. Diaz-Ramirez*, 646 F.3d 653, 657-58 (9th Cir. 2011).

10

C. *Analysis*

Mr. Mejia-Rios forfeited the three arguments he attempts to present on appeal when he did not make them before the district court. *See United States v. Olano*, 507 U.S. 725, 731 (1993). Although Mr. Mejia-Rios acknowledges he must show plain error on appeal, Oral Arg. at 4:47-5:12, Aplt. Br. at 7, he has not adequately addressed all four plain-error prongs.[5] We therefore affirm.

On appeal, Mr. Mejia-Rios does not brief the second or fourth prong. With regard to prong two, he makes no argument and merely concludes his alleged errors were plain. *See* Aplt. Br. at 15 ("The Violation of Rule 11 Was Plain-Error . . ."); *id.* at 19 ("This [due process] error was plain . . ."). He presents nothing on prong four.[6] Because "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court," *United*

---

[5] The Government contends that Mr. Mejia-Rios waived his appellate arguments when he failed to object at the plea hearing. *See* Aplee. Br. at 14. It points to the outset of the plea colloquy when the magistrate judge gave Mr. Mejia-Rios the opportunity to object to having his plea taken in a group. Because he did not do so, the Government argues, he waived his argument here. But agreeing to the sub-group colloquy was not a waiver of an objection to anything that might have happened later during the colloquy. Mr. Mejia-Rios forfeited his arguments only when he did not make them to the district court during the plea colloquy. He may seek plain error review on appeal, *United States v. Carillo*, 860 F.3d 1293, 1300 (10th Cir. 2017), but, as explained above, he has not presented arguments on two prongs of plain error.

[6] At oral argument, when asked whether a prong-four argument was made, counsel for Mr. Mejia-Rios contended that the argument was "there" and "identified . . . in the brief" but the brief did not focus on it. Oral Arg. at 5:52-6:05; 7:20-8:29. The only mention of prong four in the brief, however, is in the standard of review section, which simply lays out the plain error standard. Aplt. Br. at 7. No prong-four argument was presented.

11

*States v. Lamirand*, 669 F.3d 1091, 1099 n.7 (10th Cir. 2012) (alteration in original)

(quotations omitted), Mr. Mejia-Rios has waived his arguments on appeal. *See also*

*McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) ("[E]ven if

[appellant's] . . . arguments were merely forfeited before the *district court*, her failure to

explain in her opening appellate brief . . . how they survive the plain error standard

waives the arguments in *this* court.").[7]

---

[7] Even if Mr. Mejia-Rios had adequately presented plain error arguments on appeal, we would still affirm. Any error was not plain, given the dearth of applicable Supreme Court and Tenth Circuit case law. In fact, Mr. Mejia-Rios concedes this is a case of first impression. Oral Arg. at 0:49-0:55; *see United States v. Turrietta*, 696 F.3d 972, 981 (10th Cir. 2012) ("[W]here the law is unsettled, a matter of first impression will generally preclude a finding of plain error.").

No other circuit case has found a breach of Rule 11(b) based on a group plea hearing colloquy like Mr. Mejia-Rios's. In *Roblero-Solis*, 588 F.3d at 700, and *Arqueta-Ramos*, 730 F.3d at 1138-39, the Ninth Circuit held that groups of defendants may not collectively answer whether they understand the nature of their plea, charged offense, rights, and relevant penalties. By contrast, Mr. Mejia-Rios answered questions individually, as did all of the other defendants in his sub-group. ROA, Supp. Vol. at 3:50-10:23. Other circuits have allowed district courts to take pleas from multiple defendants simultaneously without violating Rule 11(b). *Martinez-Martinez*, 69 F.3d at 1223; *Hobson*, 686 F.2d at 629-30; *Fels*, 599 F.2d at 148.

Mr. Mejia-Rios also cannot show that the court's failure to explain his sentence calculation would constitute plain error under Rule 11(b). He offers no relevant Supreme Court, Tenth Circuit, or other circuit authority.

Finally, Mr. Mejia-Rios's due process argument would fail under plain error given the lack of any Supreme Court or Tenth Circuit case law on the issue. Other circuit authority would not help. We found only two pertinent cases, both from the Ninth Circuit. One held that a group plea hearing did not violate due process even where some of the magistrate judge's questions to the group were answered in unison. *See Diaz-Ramirez*, 646 F.3d at 658. The other held that a group plea hearing did not violate due process despite a long delay between advisement and colloquy. *See United States v. Escamilla–Rojas*, 640 F.3d 1055, 1061-62 (9th Cir. 2011). Mr. Mejia-Rios individually answered each question from the magistrate judge, and there was no delay in his hearing.

## III.  CONCLUSION

We uphold the district court's acceptance of Mr. Mejia-Rios's plea and affirm its judgment.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge