**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

AMEYALLI SUMARA ESCAMILLA-
ROJAS,
      *Defendant-Appellant.*

No. 10-10185

D.C. No.
4:09-cr-02732-
JMR-1

OPINION

Appeal from the United States District Court
for the District of Arizona
John M. Roll, Chief District Judge, Presiding

Argued and Submitted
February 16, 2011—San Francisco, California

Filed May 12, 2011

Before: Diarmuid F. O'Scannlain and Stephen S. Trott,
Circuit Judges, and Tena Campbell, District Judge.*

Opinion by Judge O'Scannlain

---

*The Honorable Tena Campbell, Senior United States District Judge for
the District of Utah, sitting by designation.

6247

## COUNSEL

Jason M. Hannan, Assistant Federal Public Defender, District of Arizona, Tucson, Arizona, argued the cause for the appellant and filed briefs. With him on the briefs was Jon M. Sands, Federal Public Defender, District of Arizona, Tucson, Arizona.

Robert L. Miskell, Assistant United States Attorney, District of Arizona, Tucson, Arizona, argued the cause for the appellee and filed a brief. With him on the brief were Dennis K. Burke, United States Attorney, and Christina M. Cabanillas, Appellate Chief, District of Arizona, Tucson, Arizona.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the taking of guilty pleas at a large group plea hearing violated a criminal defendant's rights protected by Federal Rule of Criminal Procedure 11 and the Fifth and Sixth Amendments.

I

A

On December 2, 2009, Ameyalli Escamilla-Rojas ("Escamilla") was arrested and charged with illegal entry into the United States, pursuant to 8 U.S.C. § 1325. A citizen of Mexico, Escamilla was apprehended near Sasabe, Arizona, and was charged with having entered the United States at a time and place other than that designated by immigration officials. The next day, she appeared at a group plea hearing in the United States District Court for the District of Arizona, as part of the district's "Operation Streamline."

B

As we have previously explained, "[t]o accommodate the enormous number of prosecutions for illegal entry into the United States, the district court for the District of Arizona (Tucson) has adopted a procedure for the taking of pleas en masse," known as "Operation Streamline." *United States v. Roblero-Solis*, 588 F.3d 692, 693 (9th Cir. 2009). Under the procedure, a magistrate judge is assigned to preside over a group hearing of fifty to seventy defendants charged with petty misdemeanor violations of illegal entry. The hearing combines the defendants' initial appearances, guilty pleas, and sentencing hearings into one proceeding.

Escamilla appeared before a magistrate judge, along with sixty-six other defendants who had been charged with illegal entry.[1] Fifteen different attorneys represented the sixty-seven defendants, with each attorney representing between four and six defendants. Escamilla's attorney represented a total of four defendants, and because the defendants sat in order of case number, he was unable to stand near all of his clients at once. Escamilla, like most other defendants, listened to the proceedings through headphones that broadcast the court's Spanish-language translation.

After roll call, the magistrate judge introduced himself to the defendants collectively and instructed them to stand and get his attention if they experienced any difficulty with their headphones. He then explained to the defendants how the hearing would proceed: first he would address them collectively, and thereafter he would call them up individually to speak about that address and about their pleas. He advised the defendants to "listen carefully" and again to "let [him] know

---

[1] The hearing originally included seventy defendants, but before roll call, the government dismissed the complaints against three defendants who were having difficulty understanding the court's Spanish-language interpreter.

if something happens to your headphones." The magistrate judge proceeded to inform the defendants collectively of their rights, their charges, the elements of the offense, and the consequences of pleading guilty. Throughout his advisement, he repeatedly asked the defendants to stand if they could not hear or understand what he was saying.

After the general address, the magistrate judge called the defendants individually to the front of the court room. There, each defendant was asked individually whether he understood the information that had earlier been conveyed to the group as a whole. Specifically, each defendant was asked whether he (1) understood the crime with which he was charged; (2) understood the elements of such offense; (3) understood his rights, namely the right to proceed to trial and the right to have an attorney; and (4) understood the maximum possible penalty he faced. Each defendant then stated whether he wished to give up the described rights by pleading guilty to his charge and answered whether the alleged factual basis for his charge was true.

When she was called to the front, Escamilla individually affirmed that she understood her rights and pleaded guilty to the charge of illegal entry. She was sentenced to time served and ordered to be returned to Mexico.

C

Escamilla appealed her conviction to the district court, arguing that the group hearing violated Federal Rule of Criminal Procedure 11 and her constitutional rights to due process and assistance of counsel. The district court rejected her arguments and affirmed the judgment against her, concluding that "the individual questioning of [Escamilla] . . . sufficiently closed the loop as far as what was required to make certain that [she] did knowingly, intelligently, and voluntarily waive her rights before entering a plea of guilty."

Escamilla timely appeals to this court and raises the same challenges that she presented to the district court.

## II

Escamilla first argues that the group hearing violated Federal Rule of Criminal Procedure 11 ("Rule 11"). She asserts both that the group hearing violated Rule 11(b)(1)'s requirement that the court "personally address" her and that the court failed to ensure that her plea was given voluntarily and without coercion, as required under Rule 11(b)(2). We address both arguments in turn.

## A

**[1]** Rule 11(b)(1) states that before a court may accept a plea of guilty or nolo contendere from a criminal defendant, it must "address the defendant *personally* in open court." Fed. R. Crim. P. 11(b)(1) (emphasis added). "During this address, the court must inform the defendant of, and determine that the defendant understands" his rights, the nature of his charges, the possible penalties he faces, and the effect of his plea. *Id.* Escamilla contends that Rule 11's "personally address" provision required the court to inform her *individually* of her rights and to determine that she understood them. She argues the court's group advisement failed to do so.

## 1

**[2]** The adverb "personally," as used in Rule 11, indicates that "the judge's speech is to be person to person." *Roblero-Solis*, 588 F.3d at 700. As the advisory committee's note explains, this language was added to the rule to clarify that the court must address the defendant, rather than his counsel, in person. *See* Fed. R. Crim. P. 11, advisory committee's note (1966 amendment). Although, the "rule speaks only of the defendant in the singular," it is not "rigid," and we have previously held that it does not strictly require the court to

address each defendant *individually*. *Roblero-Solis*, 588 F.3d at 700 (citing cases where small groups of co-conspirators have been addressed at once).

Nevertheless, in *United States v. Roblero-Solis*, we rejected the idea "that the number of plea-takers may be indefinitely expanded without violation of Rule 11." *Id.* In *Roblero-Solis*, a magistrate judge both advised a group of forty-seven defendants en masse of their rights and questioned the defendants en masse to determine whether they understood the advisement. *See id.* at 694-96. There, the transcript denoted only "general 'yes' " answers to the magistrate judge's questions, and the only question posed to the defendants individually was how each defendant would plead to his charge. *Id.* We held that such procedure violated Rule 11(b)(1), because "no judge, however alert, could tell whether every single person in a group of 47 or 50 affirmatively answered her questions when the answers were taken at the same time." *Id.* at 700. Instead, the court must erect a more individualized procedure "sufficient to show that *each* defendant pleaded voluntarily" and understood the consequences of such plea. *Id.* (emphasis added).[2]

**[3]** Here, as in *Roblero-Solis*, the court advised the defendants en masse of their rights and of the consequences of their charges. As our analysis in *Roblero-Solis* made clear, however, such group advisement alone does not constitute Rule 11 error. Rather, we look also to the court's *questioning* of the defendants to determine whether the court ensured "personally" that each defendant understood the rights he was waiving by pleading guilty. The hearing in this case was far more individualized than that we disapproved in *Roblero-Solis*. Stating that he "intend[ed] to take [*Roblero-Solis*] to heart and apply it as best" he could, the magistrate judge extensively ques-

---

[2]We nevertheless affirmed the convictions in *Roblero-Solis*, concluding that the defendants in that case had failed to demonstrate that the Rule 11 deficiencies amounted to plain error. *See Roblero-Solis*, 588 F.3d at 701.

tioned each defendant regarding his understanding of the rights that had been earlier described to the group. Specifically, he individually asked each defendant: (1) whether he understood the charge against him; (2) whether he understood the elements of the charge; (3) whether he understood the maximum possible penalty he was facing; (4) whether he understood the rights that had been described; (5) whether he wished to give up those rights by pleading guilty; (6) whether he is a citizen of Mexico; (7) whether he entered the United States at the place and time alleged by the government; and (8) how he chose to plead. The transcript includes specific and individual answers to these questions for each defendant, including Escamilla. Unlike in *Roblero-Solis*, the record leaves no doubt that Escamilla "affirmatively answered [the court's] questions." *Id.*

**[4]** In general, this process of a collective advisement followed by individual questioning may be sufficient to determine "personally" that each defendant understands his rights before pleading guilty. In this case, however, Escamilla was not individually questioned until nearly two hours after the magistrate judge began his group advisement. Having listened to the entire proceedings through a translator, Escamilla may have found it quite difficult to recall the court's full advisement of rights over such a long gap of time. Under these difficult circumstances, we are not persuaded that the individual questioning of Escamilla alone was enough to render the court's general advisement sufficiently "personal."**³**

2

Although the procedure in this case did not strictly comply

---

**³**We do not express a view on whether a similar procedure would satisfy Rule 11(b)(1) in another case. If, for example, the court had followed each of its general advisements immediately with individual questioning or if it had otherwise supplemented its general advisement with a written form, our concerns might be alleviated.

with Rule 11(b)(1), any "variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). Because Escamilla's counsel preserved an objection to the group advisement, the government bears the burden of proving that any Rule 11(b)(1) error was harmless. *United States v. Dominguez Benitez*, 542 U.S. 74, 81-82 (2004). In other words, if the government shows that Escamilla would have pleaded guilty even without the Rule 11 error, we must affirm. *See id.* at 83.

**[5]** Although Escamilla pleaded guilty to her charge roughly two hours after receiving the group advisement, the record is replete with evidence that she nevertheless entered her plea with full knowledge of its consequences. Indeed, Escamilla explicitly stated that she understood her rights, the charges against her, and the consequences of pleading guilty. These statements made "contemporaneously with [her] plea should be accorded great weight," even if they alone are not enough to demonstrate her understanding. *United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) (internal quotation marks omitted). Moreover, Escamilla never indicated that she had any questions about the group advisement— either by standing during such advisement, or by so indicating in her individual colloquy with the magistrate judge. Indeed, Escamilla was informed of her rights and charges not only by the court, but also by her experienced defense counsel, who stated on the record that he had met with Escamilla and fully informed her of the proceedings. Escamilla's counsel even expressly affirmed his belief that she had entered her plea knowingly and voluntarily. And, perhaps most importantly, Escamilla does not now allege that she would have pleaded differently if the magistrate judge had advised her individually rather than as part of a group.

**[6]** Ultimately, Rule 11 "exists to ensure that guilty pleas are knowing and voluntary." *United States v. Pena*, 314 F.3d 1152, 1157 (9th Cir. 2003) (internal quotation marks omitted). In light of the full record, we are satisfied that Escamilla's

guilty plea was so made and that her plea would not have changed if the magistrate judge had indeed conducted sixty-seven separate advisements of rights. Any Rule 11(b)(1) error was therefore harmless.

B

**[7]** Escamilla argues also that the proceedings violated Rule 11(b)(2). Under such rule the court must "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2). Unquestionably, the court failed so to ask Escamilla whether her plea was voluntary. But Escamilla's counsel did not raise an objection that such failure violated Rule 11(b)(2).[4] We thus review Escamilla's claim that the plea proceeding violated Rule 11(b)(2) for plain error. *See United States v. Santiago*, 466 F.3d 801, 803 (9th Cir. 2006). Under the plain error standard, Escamilla " 'must show a reasonable probability that, but for the error, [she] would not have entered the plea.' " *Roblero-Solis*, 588 F.3d at 701 (quoting *Dominguez Benitez*, 542 U.S. at 83). To vacate Escamilla's plea, we must be satisfied, as "informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Dominguez Benitez*, 542 U.S. at 83 (internal quotation marks omitted).

**[8]** Escamilla's claim falls far short of this standard, as she points to nothing in the record suggesting that she involuntar-

---

[4]Escamilla argues that such an objection is subsumed into her counsel's general Rule 11 objections. As is clear from the record, however, her counsel's Rule 11 objections were exclusively directed towards the en masse nature of the group advisement and not towards the court's failure to address any substantive area required by the rule, such as Rule 11(b)(2)'s voluntariness provision. Moreover, any possible ambiguity is eradicated by counsel's own statement that he was satisfied that Escamilla entered her plea voluntarily. The record does not reflect a preserved objection on this issue.

ily entered her guilty plea. Indeed, Escamilla's own counsel stated that he believed that Escamilla had entered her plea voluntarily. As we have discussed, the record reflects that Escamilla's plea was fully informed, and it certainly does not demonstrate that such plea would have changed if the magistrate judge had expressly inquired into the voluntariness of her decision. Although the court failed to comply strictly with Rule 11(b)(2), such failure was not plain error.

### III

**[9]** Escamilla next argues that the group plea hearing violated her Fifth Amendment right to due process. Due process requires a defendant's guilty plea to be "equally voluntary and knowing," and such plea must reflect "an intentional relinquishment or abandonment" of his privilege against self incrimination, his right to trial by jury, and his right to confront his accusers. *McCarthy v. United States*, 394 U.S. 459, 466 (1969) (internal quotation marks omitted); *accord Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). Escamilla argues that the group procedure prevented the court from being able to ascertain whether she—or any other individual defendant—knowingly and willfully waived such rights.

**[10]** Contrary to Escamilla's suggestion, the right to due process does not impose strict requirements on the mechanics of plea proceedings. Rather, the right simply requires the record to "disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Brady v. United States*, 397 U.S. 742, 747 n.4 (1970). As discussed, here the hearing transcript patently demonstrates that Escamilla was advised of her trial rights, and that thereafter she affirmatively and individually stated that she understood and chose to waive such rights.[5] She then individually pleaded

---

[5]Contrary to Escamilla's contention, she did not *silently* waive her rights by failing to stand during the court's general advisement. Rather, Escamilla expressly waived her rights (and asserted her understanding of such rights) during her individual plea colloquy with the magistrate judge.

guilty. The record does not suggest that she misunderstood her rights or involuntarily entered her plea, and there is no question that this procedure complied with due process.

IV

Finally, Escamilla claims that she was denied her Sixth Amendment right to counsel because she was unable to stand next to her counsel throughout the entire plea hearing. Specifically, Escamilla argues that she was deprived of such right because "[d]uring the en masse address, counsel . . . [was] required to sit away and apart from any particular one of his clients precisely because he cannot sit next to all of his clients, simultaneously." Notably, Escamilla does not assert when or for how long *she* was separated from her counsel, only that at least some of the defendants had to be.

**[11]** Regardless, counsel's temporary separation, of itself, does not amount to a deprivation of Escamilla's Sixth Amendment rights. The right to counsel exists "not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Without "some effect . . . on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* In other words, unless counsel's temporary separation had some "probable effect upon the trial's outcome," it did "not establish a constitutional violation." *United States v. Ross*, 338 F.3d 1054, 1056-57 (9th Cir. 2003) (per curiam) (internal quotation marks omitted).

**[12]** Despite Escamilla's insistence that her counsel's temporary separation prevented her from receiving his assistance, the record shows that she both received such assistance and fully understood the consequences of her guilty plea. Counsel acknowledged that he had adequate time to meet with Escamilla prior to the hearing. And counsel stood beside Escamilla when she individually stated that she understood her rights and entered her guilty plea. Moreover, although

counsel actively represented Escamilla and consistently made objections on her behalf, he did not seek additional time to confer with her.

Altogether, Escamilla had adequate—even superior—representation by counsel. Escamilla thus fails to "demonstrate a reasonable probability that . . . the result of the proceeding would have been different," *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (internal quotation marks omitted), if counsel had not been temporarily separated from her during the group advisement. Accordingly, the plea hearing did not deprive Escamilla of her Sixth Amendment right to counsel.

**AFFIRMED.**