# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

GILBERTO AGUILAR-VERA,
*Defendant-Appellant.*

No. 10-10333

D.C. No.
4:10-cr-00049-
DCB-1

OPINION

Appeal from the United States District Court
for the District of Arizona
David C. Bury, District Judge, Presiding

Argued and Submitted
March 13, 2012—San Francisco, California

Filed October 29, 2012

Before: J. Clifford Wallace, Dorothy W. Nelson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## COUNSEL

Jon M. Sands, Federal Public Defender, Jason M. Hannan (argued), Assistant Federal Public Defender, Brian I. Rademacher, Assistant Federal Public Defender, District of Arizona, Tucson, Arizona, for the defendant-appellant.

Dennis K. Burke, United States Attorney, Christina M. Cabanillas, Appellate Chief, and Robert L. Miskell (argued), Assistant U.S. Attorney, District of Arizona, Tucson, Arizona, for the plaintiff-appellee.

## OPINION

BEA, Circuit Judge:

On December 8, 2009, Defendant-Appellant Gilberto Aguilar-Vera was arrested and charged with violating 8 U.S.C. § 1325, misdemeanor illegal entry by an alien. The

next day, Aguilar-Vera was brought before a magistrate judge in federal court in Arizona for a guilty plea proceeding that was part of Operation Streamline, which is "a procedure for the taking of pleas en masse." *United States v. Escamilla-Rojas*, 640 F.3d 1055, 1058 (9th Cir. 2011).

On appeal, Aguilar-Vera contends that his plea violated Federal Rule of Criminal Procedure 11(b)(2), which states that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." We have several times before held that certain aspects of group plea proceedings violate various provisions of Rule 11, and we follow those precedents and again conclude there was Rule 11 error. *Escamilla-Rojas*, 640 F.3d at 1060; *United States v. Roblero-Solis*, 588 F.3d 692, 700 (9th Cir. 2009).

However, in *Escamilla-Rojas*—our last encounter with Operation Streamline in a published opinion—we held that the error was harmless. Here, again, we reach the same conclusion. As we explain below, the fact that harmless error doctrine exists means that there are some errors, no matter how clear, that our court may not correct by vacating a conviction. This is one of those errors.

## I.

The facts of this case are uncontested. We recite them as stated by the district court, with minor modifications.

On December 8, 2009, Aguilar-Vera was arrested and charged with violating 8 U.S.C. § 1325, misdemeanor illegal entry by an alien.[1] On December 9, 2009, Aguilar-Vera was

---

[1]That provision states that:

brought before a magistrate judge for a proceeding of Operation Streamline, which is "a procedure for the taking of pleas en masse." *Escamilla-Rojas*, 640 F.3d at 1058. In *Escamilla-Rojas*, we noted that Operation Streamline was created specifically "[t]o accommodate the enormous number of prosecutions for illegal entry into the United States." *Id.* In Operation Streamline proceedings, "a magistrate judge is assigned to preside over a group hearing of fifty to seventy defendants charged with petty misdemeanor violations of illegal entry. The hearing combines the defendants' initial appearances, guilty pleas, and sentencing hearings into one proceeding." *Id.*

Here, Aguilar-Vera and sixty-eight other defendants were grouped together and each instructed to answer "present" if and when their names were called out. Aguilar-Vera answered from somewhere in the room. Attorneys for other defendants proceeded to announce their appearances, and Aguilar-Vera's attorney announced his appearance for Aguilar-Vera as well as for four other defendants.

The magistrate judge then instructed all the defendants about the headphone equipment used to hear the interpreter and what to do if a malfunction should occur. Then, all defense counsel affirmed that their clients wished to plead

---

Any alien who

(1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or

(2) eludes examination or inspection by immigration officers, or

(3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offense, be fined under title 18, United States Code, or imprisoned not more than 6 months, or both, and, for a subsequent commission of any such offense, be fined under title 18, United States Code, or imprisoned not more than 2 years, or both.

guilty to the illegal entry charge and that each defendant appeared competent.

The magistrate judge continued with the proceedings by advising all defendants en masse of their rights, the charge, elements of the offense, and the maximum penalties. She continued to talk to the entire group when addressing those who had plea agreements, and she did not distinguish these defendants from the others. For instance, the district court issued the following en masse advisement:

> Some of you have signed written plea agreements with the government. And according to the terms of those agreements, in exchange for your pleading guilty, the government will dismiss the — will dismiss the felony offense of illegal reentry. The plea agreement also contains the number or the amount of time that the government wants me to give you as a sentence.

> If you plead guilty, I will accept that plea agreement and I will give you the amount of time that is in the agreement with credit for any time you may have already served or been in custody this time. . . .

> Most of you do not have written plea agreements with the government. And if I give you a sentence that you believe is illegal, you have a right to file an appeal with a higher judge or a higher court. That appeal must be filed within 14 days of today's date. If you wish to file an appeal, discuss it with your lawyer. He or she will prepare the paperwork for the appeal and will represent you during the course of that appeal.

The defendants were then asked to stand if they wanted to have a trial, and none stood.

Next, the magistrate judge called the defendants to the bench in small groups. The magistrate judge said that she would be sentencing those called in "the next groups" to a fine and special assessment without imprisonment, unless she informed counsel otherwise.

About an hour after the en masse recitation of trial rights, the sixth group of defendants, including Aguilar-Vera, was called to the bench. At this time, the magistrate judge had the following personal exchange with Aguilar-Vera:

> THE COURT: Mr. Gilberto Aguilar-Vera, sir, do you understand your rights to a trial as I explained them?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you willing to give up those rights and plead guilty?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand the charge against you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand the maximum penalties?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Of what country are you a citizen, sir?
>
> THE DEFENDANT: Mexico.

> THE COURT: On or about December 6 of this year, did you enter into southern Arizona at a point not a port of entry?
>
> THE DEFENDANT: Yes.
>
> THE COURT: How do you plead to illegal entry, sir, guilty or not guilty?
>
> THE DEFENDANT: Guilty.

Aguilar-Vera's counsel immediately objected, and the magistrate told counsel that he could file written objections following the proceeding. Counsel then stated "I would also ask that Your Honor make a determination that his plea is knowing, intelligently, voluntarily [*sic*]." The magistrate said "I will do that, sir."

The magistrate judge then questioned Aguilar-Vera's counsel concerning Aguilar-Vera's prior convictions. The government asked that Aguilar-Vera be imprisoned, and Aguilar-Vera was sentenced to 10 days in prison with credit for time served and a special assessment. Finally, the court had another brief additional colloquy with Aguilar-Vera:

> THE COURT: Mr. Aguilar-Vera, is there anything you would like to say, sir?
>
> THE DEFENDANT: I plead guilty.
>
> THE COURT: Well, sir, is there anything you want to say other than you plead guilty?
>
> THE DEFENDANT: That's fine.
>
> THE COURT: Thank you.

Aguilar-Vera's counsel timely filed written objections contending that the plea violated Federal Rule of Criminal Procedure 11(b)(1) and (b)(2),[2] but no ruling on the objection was ever made. Further, as the district court stated: "though the judgment was entered on January 6, 2010, it was signed December 9, 2009 meaning the written objection was not reviewed prior to judgment."

Aguilar-Vera appealed the conviction before the magistrate to the district court, contending that the process violated Fed. R. Crim. P. 11(b)(1) and (b)(2). In the written objections, Aguilar-Vera, through counsel, stated that he "did not and is *not* requesting an *individual* court hearing." Then counsel told the court that "Defendant specifically requested to proceed at the hearing set on December 9, 2009; counsel is obligated to follow his client's directive and objects only to ensure that the hearing comports with constitutional, precedential, and statutory requirements."

The district court found that Rule 11 was not violated, and it affirmed the conviction by guilty plea. Aguilar-Vera timely appeals.

## II.

The Court reviews de novo a district court's decision regarding questions of law, including the sufficiency of a Rule 11 plea colloquy. *United States v. Ross*, 511 F.3d 1233, 1235 (9th Cir. 2008).

---

[2]Fed. R. Crim. P. 11(b)(1) says that "[b]efore the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands [several constitutional rights]."

Fed. R. Crim. P. 11(b)(2) says that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."

The harmless error standard applies to errors preserved by objections raised during a plea proceeding. Fed. R. Crim. P. 11(h); *Escamilla-Rojas*, 640 F.3d at 1061. Under harmless error, "any variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). The harmless error standard applies here, as the objections under both Rule 11(b)(1) and 11(b)(2) were preserved to the fullest extent allowed by the magistrate judge.

### III.

We first consider whether there was error, and we conclude there was. We next consider whether the error requires reversal, and we conclude that it does not, because the error was harmless beyond a reasonable doubt.

### A.

To determine whether there was error, our guide is *Escamilla-Rojas*, our most recent published encounter with Operation Streamline. The defendant in that case pleaded guilty following substantially similar procedures to those here. 640 F.3d at 1058-59. That is, the magistrate judge first "inform[ed] the defendants collectively of their rights, their charges, the elements of the offense, and the consequences of pleading guilty." *Id.* at 1058. Then "the magistrate judge called the defendants individually to the front of the court room" where "each defendant was asked whether he (1) understood the crime with which he was charged; (2) understood the elements of such offense; (3) understood his rights, namely the right to proceed to trial and the right to have an attorney; and (4) understood the maximum possible penalty he faced." *Id.* at 1058-59.

**[1]** We held that the Operation Streamline procedure violated Rule 11(b)(1) on the facts of that case. *Id.* at 1060. Although in some cases the "process of a collective advise-

ment followed by individual questioning may be sufficient to determine 'personally' that each defendant understands his rights before pleading guilty," in that case "Escamilla was not individually questioned until nearly two hours after the magistrate judge began his group advisement." *Id.* Hence, "[h]aving listened to the entire proceedings through a translator, Escamilla may have found it quite difficult to recall the court's full advisement of rights over such a long gap of time." *Id.*

**[2]** Here, as in *Escamilla-Rojas*, there was a long delay between the magistrate judge's collective advisement and Aguilar-Vera's guilty plea—one hour, in this case. While the time gap here was one hour as compared to two in *Escamilla-Rojas*, the cause for concern is the same. Moreover, in this case, the potential for confusion was compounded by the fact that the collective advisement included multiple subgroups of defendants, some of whom had written plea agreements and some of whom did not. Likewise, some of the defendants were charged with violating both 8 U.S.C. § 1325 and 8 U.S.C. § 1326, while others were just charged with violating 8 U.S.C. § 1325.

Finally, the magistrate judge began calling sub-groups of defendants to the bench by announcing that the "next groups" called would receive only fines unless she informed counsel otherwise. Aguilar-Vera was part of the first sub-group called in which defendants risked imprisonment, but the court did not alert him to the change in possible consequences to his guilty plea or modify the colloquy in any way from the groups that preceded him.

**[3]** In *Escamilla-Rojas*, the defendant did not make a specific objection under Rule 11(b)(2), so we applied plain error review and did not state whether Rule 11(b)(2) requires a magistrate judge to ask explicitly whether the plea was knowing, voluntary, and free from coercion. 640 F.3d at 1061-62. But whether or not that was required, the magistrate judge

here did not even attempt to ascertain the voluntariness of Aguilar-Vera's plea. Rather, despite counsel's specific prompting for the magistrate to comply with this rule— counsel stated "I would also ask that Your Honor make a determination that his plea is knowing, intelligently, voluntarily [*sic*]"—the magistrate still asked no questions to Aguilar-Vera personally about this. As we have previously stated with regard to Rule 11, "[t]his is not a case in which the district judge merely failed to utter verbatim some magical words. The required advisement was not given in any form." *United States v. Graibe*, 946 F.2d 1428, 1434 (9th Cir. 1991).

**[4]** Thus, we conclude that there were errors under both Rule 11(b)(1) and 11(b)(2).

### B.

**[5]** Because Aguilar-Vera objected to the violations of Rule 11, we must determine whether the error affected Aguilar-Vera's substantial rights. If it did not, then the error was harmless. Fed. R. Crim. P. 11(h). As we have said before, "[u]ltimately, Rule 11 'exists to ensure that guilty pleas are knowing and voluntary.' " *Escamilla-Rojas*, 640 F.3d at 1061 (quoting *United States v. Pena*, 314 F.3d 1152, 1157 (9th Cir. 2003)). More specifically, Rule 11(b)(1) serves to ensure that the defendant knows and understands the rights he is giving up and the consequences of entering a guilty plea. Rule 11(b)(2) serves to ensure that the defendant's waiver of his rights and acceptance of the consequences is wholly voluntary. In other words, Rule 11(b)(1) and (b)(2) address the Supreme Court's concern that "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality" in a conviction by guilty plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Because the magistrate judge did not comply with Rule 11, the government bears the burden of identifying evidence in the record that Aguilar-Vera's guilty plea was, in fact, both knowing and voluntary.

**[6]** Here, the evidence in the record is sufficient to establish that the variance from Rule 11 did not affect Aguilar-Vera's substantial rights. Aguilar-Vera met with his lawyer before the Operation Streamline proceeding. In written objections presented to the magistrate judge, Aguilar-Vera's lawyer noted that Aguilar-Vera "specifically requested to proceed at the hearing set on December 9, 2009." This evidence shows that Aguilar-Vera wanted to enter his plea and get through the process as soon as possible, as opposed to waiting for an individualized hearing and trial. Moreover, early in the plea hearing, the magistrate judge instructed the defendants to stand if at any point they did not understand or wanted to talk to counsel. Aguilar-Vera was in the room when this instruction was given, and he did not stand during the group advisement. When the magistrate judge asked him personally whether he understood his previously explained rights, the charges against him, and the potential penalties, he answered "yes." While the delay between the advisement and the individual questioning does not satisfy Rule 11, it does provide some evidence that Aguilar-Vera knew and understood the consequences of his guilty plea. Finally, even though Aguilar-Vera's counsel properly objected to the procedure, Aguilar-Vera's counsel affirmatively represented that his client did not want a new hearing to cure the error. In his written objections, Aguilar-Vera, through counsel, stated that he "did not and is ***not*** requesting an ***individual*** court hearing." (Emphasis added).

**[7]** This evidence, taken together, leaves us with no doubt that Aguilar-Vera knew and understood the consequences of a guilty plea, and that he voluntarily chose to enter the plea. In sum, while the magistrate judge failed to comply with both Rule 11(b)(1) and (b)(2), those errors did not affect Aguilar-Vera's substantial rights. Therefore, the errors were harmless.

## IV.

Aguilar-Vera also claims that the procedures used by the magistrate judge violated the Constitution's Due Process

Clause, but in a supplemental letter brief he conceded that the due process claim is foreclosed by circuit precedent. *See United States v. Diaz-Ramirez*, 646 F.3d 653, 657-58 (9th Cir. 2011). Aguilar-Vera presses the due process claim only to preserve it in the event that *Diaz-Ramirez* is overruled or this case is heard en banc or by the Supreme Court. We therefore affirm the district court's conclusion that there was no due process violation. Aguilar-Vera is of course free to challenge *Diaz-Ramirez* in a properly filed petition for rehearing en banc or to challenge this decision in the U.S. Supreme Court.

**AFFIRMED.**