FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee*,

v.

DELCIA ARQUETA-RAMOS,
    *Defendant-Appellant*.

No. 10-10618

D.C. No.
4:10-cr-00056-RCC-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
July 10, 2013—San Francisco, California

Filed September 20, 2013

Before: Ferdinand F. Fernandez, Richard A. Paez,
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Paez

**SUMMARY***

**Criminal Law**

The panel vacated a conviction for illegally entering the United States and remanded in a case in which the defendant pled guilty during an "Operation Streamline" proceeding for the taking of pleas *en masse*.

The panel held that although the district court did not err under Fed. R. Crim. P. 11(b)(1) by advising the defendants of their rights *en masse*, it erred by not questioning the defendant individually to ensure that she understood her rights. The panel held that questioning defendants in groups of five – collectively asking each group several questions to ascertain whether the defendants understood their rights and consequences of their pleas, and accepting "all answer yes" and "all answer no" responses to these questions – cannot render the court's general advisement sufficiently personal so as to satisfy Rule 11(b)(1).

The panel concluded that the government did not carry its burden of proving that the defendant would have pleaded guilty even without the Rule 11 error.

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Saul M. Huerta (argued), Assistant Federal Public Defender, and Jon M. Sands, Federal Public Defender, Tucson, Arizona, for Defendant-Appellant.

Wilbert L. Rocker, Jr. (argued), Special Assistant United States Attorney, John S. Leonardo, United States Attorney, and Christina M. Cabanillas, Appellate Chief, Tucson, Arizona, for Plaintiff-Appellee.

**OPINION**

PAEZ, Circuit Judge:

Defendant Delcia Arqueta-Ramos appeals her conviction for illegally entering the United States, in violation of 8 U.S.C. § 1325(a)(1). She pled guilty to this offense during an "Operation Streamline" proceeding, which is "'a procedure for the taking of pleas en masse.'" *United States v. Escamilla-Rojas*, 640 F.3d 1055, 1058 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 101 (2012) (quoting *United States v. Roblero-Solis*, 588 F.3d 692, 693 (9th Cir. 2009)).

On appeal, Arqueta-Ramos argues that the plea proceeding violated Federal Rule of Criminal Procedure 11(b)(1), which requires the court to "address the defendant personally in open court." Fed. R. Crim. P. 11(b)(1). Under Rule 11, the court must both "inform the defendant of" her pre-trial and trial rights "and determine that the defendant understands" those rights. *Id.* at (A)–(N). We conclude that, although the court did not err by advising the defendants of their rights *en masse*, it erred by not questioning Arqueta-

Ramos individually to ensure that she understood her rights. *See Escamilla-Rojas*, 640 F.3d at 1060.

We further conclude that the government has not carried its burden of proving "that [Arqueta-Ramos] would have pleaded guilty even without the Rule 11 error." *Id.* at 1061; *see also* Fed. R. Crim. P. 11(h). We therefore vacate Arqueta-Ramos's conviction and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

On December 29, 2009, the government charged Arqueta-Ramos with illegally entering the United States, a misdemeanor. *See* 8 U.S.C. § 1325(a)(1). She pled guilty to this offense during an "Operation Streamline" group plea proceeding that same day. Operation Streamline is a program established by the United States Department of Justice that "requires criminal prosecution and imprisonment of all individuals unlawfully crossing the border." *In re Approval of Judicial Emergency Declared in Dist. of Ariz.*, 639 F.3d 970, 974 (9th Cir. 2011). The program has "eliminated the discretion traditionally reserved by United States Attorney's offices," resulting in "a burgeoning number of federal criminal prosecutions in all districts bordering Mexico," especially the United States District Court for the District of Arizona. *Id.*

"To accommodate the enormous number of prosecutions" that must take place under Operation Streamline, the District of Arizona "has adopted a procedure for the taking of pleas en masse intended to preserve the rudiments of [Federal Rule

of Criminal Procedure] 11 and the [C]onstitution." *Roblero-Solis*, 588 F.3d at 693.**¹**  As we have previously explained,

> In Operation Streamline proceedings, a magistrate judge is assigned to preside over a group hearing of fifty to seventy defendants charged with petty misdemeanor violations of illegal entry.  The hearing combines the defendants' initial appearances, guilty pleas, and sentencing hearings into one proceeding.

*United States v. Aguilar-Vera*, 698 F.3d 1196, 1198 (9th Cir. 2012) (internal quotations marks and citation omitted); *see also Roblero-Solis*, 588 F.3d at 694.

At this particular hearing, the magistrate judge took a roll call of sixty-six defendants, including Arqueta-Ramos, who were present "for initial appearance, possible change of plea and sentencing."**²**  Transcript of Proceedings, Initial Appearance, Change of Plea and Sentencing, *United States v. Arqueta-Ramos*, No. 09-37497MP (D. Ariz. Dec. 29, 2009), ECF No. 14.**³**  The defendants were represented by fifteen

---

**¹** Arqueta-Ramos does not argue that the plea proceeding in this case violated her constitutional rights.  *Cf. United States v. Diaz-Ramirez*, 646 F.3d 653, 658 (9th Cir. 2011) (holding that under plain error review, the *en masse* Operation Streamline plea proceeding did not violate the defendants' Fifth Amendment due process rights), *cert. denied*, 133 S. Ct. 101 (2012).

**²** The judge also continued one case and dismissed four cases at the beginning of the hearing.

**³** All subsequent references and quotations to this hearing are taken from this document.

different lawyers, each of whom represented between three and five defendants.  During the roll call, Arqueta-Ramos requested a hearing outside of the *en masse* proceeding on the ground that the proceeding did not comply with Rule 11.  The judge denied the request.

The judge then collectively addressed the group of sixty-three defendants.[4]  She asked them to "please stand" if they were "having trouble hearing through [their] headphones." No one stood.  The judge then explained,

> I'm going to start by addressing all of you as a group, and then I will call you and your attorneys up five at a time to speak to you more individually about your case.

> If at any time during this proceeding you don't understand, and would like your attorney to approach and speak with you, please stand up, and let me know right away, I'll stop the proceedings and have you consult with your attorney.

The judge then advised the defendants of their pre-trial and trial rights.  First, the judge informed the defendants that they had the right to be represented by a court-appointed attorney if they could not afford their own.  She then stated that each defendant had been given an attorney before the hearing and asked the defendants to "please stand" if they were not given

---

[4] During the roll call, the judge agreed to handle three of the sixty-six cases separately, given the defendants' limited knowledge of Spanish. She ultimately dismissed these cases because the defendants were unable to understand their attorney.

sufficient time to meet with their attorneys.  No defendant stood.  Second, the judge informed the defendants that they had a right to remain silent, but would give up that right if they pled guilty.  She asked "anyone [who] does not understand this right [to] please stand"; no one stood. Third, the judge informed the defendants that "[t]he maximum penalties for illegal entry are six months in prison and a fine of $5,000."  Fourth, the judge informed the defendants that if they pled guilty they would have a criminal conviction on their records.  She further explained that, after serving their sentences, the defendants would be deported, not just voluntarily returned, to their native countries, and that, if they illegally re-entered the United States again, they could be charged with a felony and serve years in prison.  Fifth, the judge explained that the defendants who had entered into written plea agreements were waiving their right to appeal, and the defendants who had not signed such agreements would have fourteen days to file a notice of appeal.  The judge then explained what rights the defendants would have if they decided to proceed to trial.

After informing the defendants of their rights, the judge said "I'm now going to call those of you that do not have plea agreements up in groups of five with your attorney, and ask you more specific questions."[5]  The judge called ten such groups; Arqueta-Ramos was in the eighth group called, along with four other defendants.  The following exchange took place among the judge, the defendants, and the attorneys:

---

[5] The judge later called forward defendants with plea agreements, also in groups of five.

Court: Counsel, do each of you believe that your clients are competent to plead and are pleading voluntarily?

All answer yes.

Court:  Do each of you believe that your clients understand the penalties they're facing and the rights they're giving up?

All answer yes.

Court:  Do any of the defendants feel threatened or forced to plead guilty?

Interpreter: All answer no.

Court: Do each of you understand the maximum penalties?

Interpreter: All answer yes.

Court: Do each of you understand your right to a court trial?

Interpreter: All answer yes.

Court: Do each of you wish to waive this right and plead guilty?

Interpreter: All answer yes.

Court: Do each of you understand your right to appeal?

Interpreter: All answer yes.

Court: Are any of you citizens of the United States?

Interpreter: All answer no.

Court: Did each of you enter the United States during the last seven days?

Interpreter: All answer yes.

Court: Did each of you enter near the cities of Nogales, Sasabe or Douglas?

Interpreter: All answer yes.

Court: Did each of you – did any of you enter at a designated port of entry in one of these cities?

Interpreter: All answer no.

Court: Did any of you have legal authorization to be in the United States?

Interpreter: All answer no.

. . .

Court: Miss Arqueta-Ramos, how do you plead, guilty or not guilty?

Defendant: Guilty.

Immediately after this colloquy, Arqueta-Ramos renewed her objection that the proceeding violated Rule 11.  Her attorney argued that "Rule 11 requires that the [c]ourt address individuals personally," explaining that the objection was "not to what the [c]ourt said specifically," but rather "to the process as a whole," which "does not allow for individuals to be seen personally by the [c]ourt."  The judge rejected Arqueta-Ramos's argument, entered a judgment of conviction, and sentenced her to time served.  According to the government, Arqueta-Ramos was removed from the United States that same day.

Arqueta-Ramos appealed to the district court, which rejected her Rule 11 argument and affirmed her conviction. *See* 18 U.S.C. 3402.  Arqueta-Ramos timely appealed the district court's judgment of conviction.

## II. STANDARD OF REVIEW

"The Court reviews de novo a district court's decision regarding questions of law, including the sufficiency of a Rule 11 plea colloquy."  *Aguilar-Vera*, 698 F.3d at 1200. Where, as here, the defendant raised her objections during the plea proceeding, the court reviews for harmless error.  *Id.*

## III. ANALYSIS

### A.

We must decide if the district court complied with its Rule 11 duty to "address the defendant personally in open court," which includes both informing the defendant of her rights and determining that she understands those rights.  Fed.

R. Crim. P. 11(b)(1).**⁶**  In deciding this issue, we do not write on a blank slate.  "We have several times before held that certain aspects of [Operation Streamline] violate . . . Rule 11," and "we follow those precedents."  *Aguilar-Vera*, 698 F.3d at 1197.

In our first encounter with Operation Streamline, we held that it was error for the court to both advise and question forty-seven to fifty defendants *en masse*, accepting "general yes" responses when the court asked the group of defendants if they understood their rights.  *Roblero-Solis*, 588 F.3d at 695; *see also id.* at 700.  We concluded that the court's Rule 11 duty to "address the defendant personally in open court," Fed. R. Crim. P. 11(b)(1), requires that "the judge's speech . . . be person to person," *Roblero-Solis*, 588 F.3d at 700.  Thus, we held, "the number of plea-takers may [not] be indefinitely expanded without violation of Rule 11."  *Id.*

We refined our rule from *Roblero-Solis* in *Escamilla-Rojas*.  There, as in *Roblero-Solis*, the court had collectively advised sixty-seven defendants of their rights.  *Escamilla-Rojas*, 640 F.3d at 1058.  It then questioned each defendant individually to ascertain whether the defendant understood her rights.  We explained,

> [S]uch group advisement alone does not constitute Rule 11 error.  Rather, we look also to the court's *questioning* of the defendants to

---

**⁶** "Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court.  During this address, the court must inform the defendant of, and determine that the defendant understands, the following . . . . "  Fed. R. Crim. P. 11(b)(1).

> determine whether the court ensured "personally" that each defendant understood the rights he was waiving by pleading guilty. . . .
>
> In general, this process of a collective advisement followed by individual questioning may be sufficient to determine "personally" that each defendant understands his rights before pleading guilty.

*Id.* at 1060.   Under the facts of that case, however, we concluded that the court had not complied with Rule 11 because the defendant "was not individually questioned until nearly two hours after the magistrate judge began his group advisement," and he "may have found it quite difficult to recall the court's full advisement of rights  over such a long gap of time."   *Id.*[7]   We reached the same conclusion when faced with nearly identical facts in *Aguilar-Vera*.[8]

---

[7] In *Escamilla-Rojas*, we noted that if "the court had followed each of its general advisements immediately with individual questioning or if it had otherwise supplemented its general advisement with a written form, our concerns might be alleviated."  640 F.3d at 1060 n.3.

[8] In *Aguilar-Vera*, as in *Escamilla-Rojas*, the court had advised a large group of defendants of their rights, and then questioned them individually to ensure they understood their rights.  698 F.3d at 1198–99.  We held that there was Rule 11 error because of the "long delay between the magistrate judge's collective advisement and Aguilar-Vera's guilty plea—one hour, in this case."  *Id.* at 1201.  We also held that there was Rule 11 error because the collective advisement had included "multiple subgroups" of defendants, not all of whom were charged with the same offense(s), and the judge did not clearly explain which sub-groups risked imprisonment and which would receive only fines.  *Id.*

Here, we face a new permutation of events: as in our prior cases concerning Operation Streamline, the court advised a large group of defendants of their rights *en masse*. However, it then questioned them in small groups of five, collectively asking each group several questions to ascertain whether the defendants understood their rights and the consequences of their pleas. The court accepted "all answer yes" and "all answer no" responses to these questions. We conclude that such small-group questioning, unlike individual questioning, cannot "render the court's general advisement sufficiently 'personal,'" so as to satisfy Rule 11(b)(1). *See Escamilla-Rojas*, 640 F.3d at 1060. Indeed, we have held that "the word order in which 'personally' follows 'the defendant' [in Rule 11] emphasizes that the judge's speech is to be *person to person*." *Roblero-Solis*, 588 F.3d at 700 (emphasis added). Here, however, the court did not engage in "person to person" speech during the advisement of rights *or* the subsequent small group questioning of the defendants. The only individual question that the court asked Arqueta-Ramos was "how do you plead, guilty or not guilty?," to which she responded "guilty." We hold that the court's collective group questioning, where "nothing in the record . . . establishe[d] any connection between the defendants," *id.*, violated the requirement that the court "address the defendant personally in open court," Fed. R. Crim. P. 11(b)(1).[9] *See Roblero-Solis*, 588 F.3d at 693 ("We act within a system maintained by the rules of procedure. We cannot dispense with the rules without setting a precedent subversive of the structure.").

---

[9] Because we hold that the court erred on this basis, we do not address Arqueta-Ramos's alternative arguments: (1) that there was a "gap" between the group advisement of rights and small-group questioning, as in *Escamilla-Rojas* and *Aguilar-Vera*, and (2) that the collective advisement included subgroups with different rights, as in *Aguilar-Vera*.

B.

We next consider whether the district court's Rule 11 error warrants reversal. "A variance from the requirements of [Rule 11] is harmless," and does not require reversal, "if it does not affect substantial rights." Fed. R. Crim. P. 11(h). "For an error to affect substantial rights, 'in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings.'" *United States v. Collins*, 684 F.3d 873, 881 (9th Cir. 2012) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)); *see also United States v. Jimenez-Dominguez*, 296 F.3d 863, 867 (9th Cir. 2002). Because Arqueta-Ramos preserved her Rule 11 objection, the government has "the burden of persuasion with respect to prejudice." *United States v. Joseph*, 716 F.3d 1273, 1280 n.9 (9th Cir. 2013) (internal quotation marks and citation omitted). That is, the government must show "that [Arqueta-Ramos] would have pleaded guilty even without the Rule 11 error." *Escamilla-Rojas*, 640 F.3d at 1061; *see also Aguilar-Vera*, 698 F.3d at 1201 ("Because the magistrate judge did not comply with Rule 11, the government bears the burden of identifying evidence in the record that Aguilar-Vera's guilty plea was, in

fact, both knowing and voluntary.").**[10]**   We conclude that it has failed to do so here.

The government relies heavily on *Escamilla-Rojas*, where we held that the record was "replete with evidence that [the defendant] . . . entered her plea with full knowledge of its consequences."   640 F.3d at 1061.   We reached the same conclusion in *Aguilar-Vera*.   698 F.3d at 1202.   But the record here is not as replete with such evidence.   First, unlike in *Escamilla-Rojas* and *Aguilar-Vera*, Arqueta-Ramos did not "explicitly state[] that she understood her rights, the charges against her, and the consequences of pleading guilty." *Escamilla-Rojas*, 640 F.3d at 1061; *see also id.* at 1060 ("The transcript includes specific and individual answers to these questions for each defendant, including Escamilla.").   Rather, as discussed *supra*, Arqueta-Ramos did not *personally* tell the judge anything, other than that she wished to enter a plea of "guilty."   The record reflects only "all answer yes" and "all

---

**[10]** The government argues that we should review for plain error, because "by asking the court to accept the defendant's plea and proceed to sentencing, defense counsel in effect withdrew his objections relating to the alleged invalidity of the plea." *Cf. United States v. Vonn*, 535 U.S. 55, 59 (2002) (holding that we review for plain error where a defendant did not preserve her Rule 11 objection).   But the government does not cite any cases suggesting that a defendant who requests that his plea be accepted constructively withdraws all objections to the plea proceeding. Furthermore, such a rule does not make sense: if a defendant's guilty plea wiped out all prior objections to the plea proceeding, then *no* Rule 11 error could be reviewed for harmless error.   *Cf. United States v. Davila*, 133 S. Ct. 2139, 2147 (2013) ("[A] Rule 11 error may be of the Rule 52(a) type, or it may be of the Rule 52(b) kind, depending on when the error was raised.").   Nor can we reconcile such a rule with our decisions in *Escamilla-Rojas* and *Aguilar-Vera*, where we reviewed for harmless error under procedurally similar facts.   *See Aguilar-Vera*, 698 F.3d at 1201; *Escamilla-Rojas*, 640 F.3d at 1060–61.

answer no" responses from the small group of defendants. We do not know how assuredly or uncertainly Arqueta-Ramos responded to these questions; indeed, we are not certain that the magistrate judge would have even detected if Arqueta-Ramos failed to answer one of the questions. *See Roblero-Solis*, 588 F.3d at 700 (expressing concern about a judge's ability "to hear distinctly and accurately" multiple voices offering collective responses, "however conscientious" the judge).

Furthermore, although "statements made by a criminal defendant contemporaneously with his plea" are ordinarily "accorded great weight" when "assessing the voluntariness of the plea," *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986), we have accorded them less weight where they were made in response to actions by the judge that violated Rule 11. *See United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) (explaining that, where the district court improperly participated in plea negotiations and imposed "unreasonable constraints" regarding the time period within which the defendant could plead guilty, "[the defendant's] responses to the judge's questioning" did not "allay our concerns regarding voluntariness"), *abrogated on other grounds by Davila*, 133 S. Ct. at 2146 n.2. *Cf. United States v. Villalobos*, 333 F.3d 1070, 1075 (9th Cir. 2003) ("The fact that Villalobos stipulated to a drug quantity as part of his plea agreement does not show that he would have pled guilty to this quantity or pled guilty at all if he had been properly informed about the burden of proof as to quantity."). We therefore assign only minimal weight to Arqueta-Ramos's record of participation in the collective "all answer yes" and "all answer no" responses to the judge's questioning about whether the defendants understood their rights.

We likewise reject the government's second argument, that Arqueta-Ramos's failure to indicate that she had any questions during the plea colloquy shows that the Rule 11 error was harmless.    In *Escamilla-Rojas*, we found it significant that the defendant "never indicated that she had any questions," either during the group advisement "*or . . . in her individual colloquy with the magistrate judge*." *Escamilla-Rojas*, 640 F.3d at 1061 (emphasis added); *see also Aguilar-Vera*, 698 F.3d at 1202 (noting that Aguilar-Vera did not stand when the defendants were told to "stand if at any point they did not understand").  But here, again, there was no individual colloquy.  Nor was there a clear point during the small group colloquy at which Arqueta-Ramos could have asked a question:  the court did not give the defendants an opportunity to ask questions until *after* she had accepted their guilty pleas, at which point it is not clear what questions Arqueta-Ramos might have even asked.[11]  Thus, under the facts of this case, Arqueta-Ramos's failure to ask a question is less persuasive evidence of the voluntariness of her plea than it was in *Escamilla-Rojas*.

Nor can we rely on the third factor identified in *Escamilla-Rojas*:  there, we found it significant that the defendant was "informed of her rights and charges . . . by her experienced defense counsel," and that counsel "stated on the record that he had met with Escamilla and fully informed her of the proceedings."  *Id.* at 1061; *see also Aguilar-Vera*, 698 F.3d at 1202.  There is no such evidence here.  The record does not reflect any statements by counsel about what he told Arqueta-Ramos, much less that he had "fully

---

[11] The court did give the defendants an opportunity to ask questions during the large group advisement, telling them to stand up if at any time they did not understand the proceeding.

informed her" of the proceedings.  It's true that counsel did tell the judge that he had "sufficient time" to speak with Arqueta-Ramos, and that he joined in the "all answer yes" responses to the court's questions, "do each of you believe that your clients are competent to plead and are pleading voluntarily?," and "[d]o each of you believe that your clients understand the penalties they're facing and the rights they're giving up?"  But counsel's statement that *he* believed his client understood her rights and was pleading voluntarily tells us little about the substance and depth of his conversations with his client.  *Cf. United States v. Pena*, 314 F.3d 1152, 1156 (9th Cir. 2003) ("The plea colloquy failed to comply with Rule 11 because the district court never explained to Pena the nature of the charges against him.  Merely asking Pena whether he had read the plea agreement and asking his attorney whether the attorney, *not* Pena, understood and agreed with the elements of the offense is insufficient."); *United States v. Graibe*, 946 F.2d 1428, 1434 (9th Cir. 1991) ("What is critical in Rule 11 harmless error cases is what the defendant knew at the time of the plea . . . .").  In the absence of more affirmative evidence of what Arqueta-Ramos knew at the time of her plea, we do not find this argument persuasive.

Finally, the government argues that Arqueta-Ramos has failed to allege that she would have pled differently if given a proper plea colloquy.  *See Escamilla-Rojas*, 640 F.3d at 1061 ("Escamilla does not now allege that she would have pleaded differently if the magistrate judge had advised her individually rather than as part of a group.").  We agree that if Arqueta-Ramos had made such an allegation, it would be persuasive evidence that the error was not harmless.  But it is not her burden to show that she would not have pled guilty absent the Rule 11 error; it is the government's burden to

show that she *would* have pled guilty absent the error. *See id.*; *Jimenez-Dominguez*, 296 F.3d at 866 ("The harmless error standard, *which imposes the burden upon the government* to show that the error had no effect on the defendant's substantial rights, applies to any transgression of Rule 11 which was raised before the trial court." (emphasis added)); *see also* Fed. R. Crim. P. 11 advisory committee notes (explaining that "subdivision (h) should not be read as supporting extreme or speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards").[12]

In sum, "it is impossible to know . . . what [Arqueta-Ramos] would have done," absent the Rule 11 error. *United States v. Kennell*, 15 F.3d 134, 136–37 (9th Cir. 1994). With so little evidence on the issue one way or the other, the burden of proof becomes dispositive. The government has the burden of showing that Arqueta-Ramos *would* have pled guilty absent the error, and it has failed to do so here.

**VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

---

[12] In *Aguilar-Vera*, the court also cited two additional factors in support of its conclusion that the error was harmless: (1) the defendant in *Aguilar-Vera* had "'specifically requested'" a particular hearing date, showing that he "wanted to enter his plea and get through the process as soon as possible," and (2) the defendant specifically stated in his written objections that he was "'*not* requesting an *individual* court hearing.'" 698 F.3d at 1202 (quoting the defendant's written objections). The government does not argue that the record here contains such evidence.